(No. 49149.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. DANNY RAY WOLGEMUTH, Appellee.

*Opinion filed December 12, 1977.*

156

William J. Scott, Attorney General, of Springfield, and Edward Keefe, State's Attorney, of Rock Island (James B. Zagel, Jayne A. Carr, Donald B. Mackay, Raymond McKoski, and Thomas Connors, Assistant Attorneys General, of Chicago, and James E. Hinterlong, of the Illinois State's Attorneys Association Prosecutors Appellate Service, of Ottawa, of counsel), for the People.

Ralph Ruebner, Deputy Defender, and Richard E. Steck, Assistant Defender, of the Office of State Appellate Defender, of Chicago, for appellee.

Fred E. Inbau, of Chicago, and Frank G. Carrington, of Evanston, for *amicus curiae* Americans for Effective Law Enforcement, Inc.

Wayne W. Schmidt, of Evanston, for *amicus curiae* Illinois Association of Chiefs of Police, Inc.

MR. JUSTICE MORAN delivered the opinion of the court:

After a jury trial in the circuit court of Rock Island County, the defendant, Danny Ray Wolgemuth, was convicted of unlawful possession of less than 200 grams of a controlled substance. He was sentenced to a term of imprisonment of not less than one year nor more than three years. The appellate court reversed the conviction, holding that the trial court had erred in denying defendant's motion to suppress evidence discovered incident to an unlawful, warrantless arrest of the defendant. 43 Ill. App. 3d 335.

The issue before this court is whether, by entering the defendant's private dwelling to make the arrest, the police

violated the defendant's fourth amendment right to be secure against unreasonable search and seizure.

A court in Keokuk, Iowa, issued an arrest warrant against the defendant for the offense of burglary. In pursuit of the fruits of the burglary, Iowa authorities used the arrest warrant to obtain an Illinois search warrant to search what they believed to be the defendant's residence in Rock Island. The search by Iowa police, assisted by Officer Donald Barker of the Rock Island city police department, proved fruitless.

The next day, Officer Barker received a tip from Helen Allen, a probation officer. The tip, based on information from an anonymous informant who was unknown to Barker, informed Barker that the defendant was residing with one of Ms. Allen's female probationers at an address other than that which had been searched the previous day. The record indicates that the defendant and the female probationer had rented an apartment jointly as husband and wife. At approximately 10 a.m., Barker, Ms. Allen, and Officer Smiley went to the apartment without an arrest or search warrant in their possession. Barker testified that they knocked on the door for about 10 minutes, but no one responded. The officers checked with neighbors, who indicated that persons fitting the descriptions conveyed by the police did reside in the apartment and had not been seen leaving the apartment that morning. The officers went to the manager and had him call the owner of the building. With the owner present, the officers knocked on the door again for approximately five minutes before the owner, with a pass key, admitted them into the defendant's apartment. At the suppression hearing, Officer Barker testified that he did not remember whether the police had announced their authority and purpose as they entered the apartment.

Once inside, the police walked through a living room into the bedroom where they found the defendant and the

female probationer asleep. As Officer Smiley took the defendant into custody, Officer Barker noticed plastic pill bottles without prescription labels on a table at the foot of the bed. Barker also stepped on pills, scattered on the floor, which appeared similar to those in the bottles. Barker seized the bottles, the contents of which were later introduced into evidence.

It is conceded that if the entry and arrest were lawful, the seized pills would be admissible as evidence found in plain view incident to a lawful arrest. It is also conceded that the police had probable cause to arrest the defendant and that, had the defendant been arrested on a public street without a warrant, no constitutional issue would be involved.

The decision of the appellate court in this case presupposes that the police made a *warrantless* arrest. (43 Ill. App. 3d 335, 338.) Based on this assumption, the appellate court held that the warrantless arrest was a violation of the fourth amendment because no exigent circumstances existed to obviate the requirement of a warrant. (Although the United States Supreme Court has consistently reserved judgment on the constitutionality of a warrantless entry into a home to make an arrest absent exigent circumstances (see *United States v. Santana* (1976), 427 U.S. 38, 47, 49 L. Ed. 2d 300, 307, 96 S. Ct. 2406, 2410 (dissenting opinion); *United States v. Watson* (1976), 423 U.S. 411, 418 n.6, 46 L. Ed. 2d 598, 605 n.6, 96 S. Ct. 820, 825 n.6; *Gerstein v. Pugh* (1975), 420 U.S. 103, 113 n.13, 43 L. Ed. 2d 54, 65 n.13, 95 S. Ct. 854, 863 n.13; *Johnson v. Louisiana* (1972), 406 U.S. 356, 365, 32 L. Ed. 2d 152, 161, 92 S. Ct. 1620, 1626; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 480-81, 29 L. Ed. 2d 564, 591, 91 S. Ct. 2022, 2045; *Jones v. United States* (1958), 357 U.S. 493, 499-500, 2 L. Ed. 2d 1514, 1519, 78 S. Ct. 1253, 1257), at least five Federal courts of appeal have acknowledged that such warrantless entries

may be unconstitutional. See *Salvador v. United States* (8th Cir. 1974), 505 F.2d 1348, 1351-52; *United States v. Phillips* (9th Cir. 1974), 497 F.2d 1131, 1135; *United States v. Shye* (6th Cir. 1974), 492 F.2d 886, 891-93; *Dorman v. United States* (D.C. Cir. 1970), 435 F.2d 385, 389-94; *Vance v. North Carolina* (4th Cir. 1970), 432 F.2d 984, 990-91.)

We need not inquire whether exigent circumstances justified the entry, because we are of the opinion that the warrant issued by an Iowa magistrate validated the entry.

Defendant contends that the entry was warrantless because an Iowa arrest warrant has no validity beyond the boundaries of Iowa. This position accurately expresses the common law absent statutory authority to the contrary. (5 Am. Jur. 2d *Arrest* secs. 18, 20 (1962).) Defendant overlooks the Illinois statute which expressly provides that "[a] peace officer may arrest a person when \*\*\* [h]e has reasonable grounds to believe that a warrant for the person's arrest has been issued in this State *or in another jurisdiction.*" (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(b).) The plain meaning of the statute authorizes police to arrest on the basis of out-of-State, as well as in-State, warrants. Defendant does not challenge the intrinsic constitutionality of the Iowa warrant, *e.g.,* that it was not based on probable cause or that it did not adequately describe the person to be arrested or that it was not issued by a neutral magistrate. Moreover, the Iowa warrant is not invalidated merely because the officers failed to have it in their possession at the time of the arrest. The committee's comments accompanying section 107—2(b) specify:

> "Under subsection (b) it is not necessary for the officer to have the warrant with him to make an arrest based on a warrant." (Ill. Ann. Stat., ch. 38, par. 107—2(b), Committee Comments, at 162 (Smith-Hurd 1970).)

Also see *People v. Jeffries* (1964), 31 Ill. 2d 597, for the

same conclusion in a related context.

The fact that an arrest warrant had been issued distinguishes this case from that in which police execute a *warrantless* entry of a suspect's home. The primary function of the warrant requirement of the fourth amendment is to interpose prior to an arrest a neutral magistrate's review of the factual justification for the charges. (*United States v. Watson* (1976), 423 U.S. 411, 417, 46 L. Ed. 2d 598, 605, 96 S. Ct. 820, 825.) This serves to relieve police officers, "engaged in the often competitive enterprise of ferreting out crime," of the responsibility of drawing neutral and sober inferences regarding a suspect's criminality. (*Johnson v. United States* (1948), 333 U.S. 10, 14, 92 L. Ed. 436, 440, 68 S. Ct. 367, 369; *Gerstein v. Pugh* (1975), 420 U.S. 103, 112, 43 L. Ed. 2d 54, 64, 95 S. Ct. 854, 862.) It is this division of responsibility which militates against "the dangers of unlimited and unreasonable arrests of persons who are not at the moment committing any crime." (*Trupiano v. United States* (1948), 334 U.S. 699, 705, 92 L. Ed. 1663, 1669, 68 S. Ct. 1229, 1232.) The warrant requirement of the fourth amendment is not frustrated in this case by the distinctive fact that the arrest warrant was issued in a State other than that in which it was executed. Whether a valid foreign warrant is effective in Illinois is a matter of State, not constitutional, law. A suspect's constitutional right to have a neutral magistrate determine whether probable cause exists for his arrest is not undermined by Illinois' choice to extend comity to the determination of a magistrate from another State. The entry of the police into defendant's home was, therefore, properly executed pursuant to a valid Iowa warrant for the defendant's arrest.

The defendant also contends that his right to be secure against unreasonable search and seizure was violated by the failure of police to announce their authority and purpose before entering to arrest him. Because the

appellate court found that the defendant's constitutional right had been violated by the warrantless entry, it did not address this issue.

Illinois has no statutory requirement that an officer must announce his authority and purpose. The applicable Illinois statute merely states:

"All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to make an authorized arrest." (Ill. Rev. Stat. 1973, ch. 38, par. 107—5(d).)

Therefore, if we are to hold that the officers were required to state their authority and purpose before entering the defendant's apartment to make the authorized arrest, we must find either that the fourth amendment requires an announcement as an essential element of a reasonable search and seizure, or that, under the circumstances in this case, the failure to announce rendered the entry constitutionally unreasonable.

The United States Supreme Court has, in three cases, considered whether an officer must announce his authority and purpose before entering a home to arrest or search. Two of these cases involved the interpretation of a Federal statute which provided:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." (18 U.S.C. sec. 3109.)

In *Miller v. United States* (1958), 357 U.S. 301, 2 L. Ed. 2d 1332, 78 S. Ct. 1190, Federal narcotics agents ripped the chain from the apartment door before entering to effect an arrest. One of the agents had announced in a low voice that "police" were at the door, but had failed to specify the purpose for demanding the admission. The officers had no arrest or search warrant. The court tested

the legality of the entry by criteria identical to those embodied in the statutory provision, even though the statute applied expressly to entries pursuant to a search warrant. (357 U.S. 301, 306, 2 L. Ed. 2d 1332, 1336, 78 S. Ct. 1190, 1194.) The court held that the violent, unannounced entry was unlawful because it violated the Federal statute. Although the court noted that "[t]he requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application" (357 U.S. 301, 313, 2 L. Ed. 2d 1332, 1340, 78 S. Ct. 1190, 1198), the decision is silent regarding the constitutional status of the requirement.

In *Sabbath v. United States* (1968), 391 U.S. 585, 20 L. Ed. 2d 828, 88 S. Ct. 1755, Federal customs agents knocked on the door and, receiving no response, opened the closed but unlocked door and entered the apartment with guns drawn. The agents announced neither their authority nor their purpose. The court held that the unannounced entry was unlawful because of its interpretation of section 3109. The section permitted the "break-[ing] open [of] any outer or inner door or window of a house" only after such announcement and refusal of admittance. The section was found to encompass all entries, including the turning of a door knob or the use of a pass key. Again, whether the Constitution itself required the announcement of authority and purpose was not at issue.

*Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623, is the Supreme Court case most readily cited for the proposition that the fourth amendment to the Constitution incorporates the announcement requirement. (*United States v. Manning* (2d Cir. 1971), 448 F.2d 992, 1001, *cert. denied* (1971), 404 U.S. 995, 30 L. Ed. 2d 548, 92 S. Ct. 541; *People v. Polito* (1976), 42 Ill. App. 3d 372, 378, *cert. denied* (1977), —— U.S.

————, 54 L. Ed. 2d 153, 98 S. Ct. 220; 80 Yale L.J. 139, 146 (1970). Contra, *People v. Hartfield* (1968), 94 Ill. App. 2d 421, 430.) In *Ker,* the officers investigating a narcotics sale, surreptitiously entered the defendant's apartment with a pass key obtained from the building manager. The officers did not have a search or arrest warrant and did not knock; they announced their authority and purpose only after they entered the apartment and found the defendant sitting in the living room. California law provided:

> "To make an arrest \*\*\* in all cases a police officer, may break open the door or window of the house in which the person to be arrested is, or in which \*\*\* [the officer has] reasonable grounds for believing him to be, after having demanded admittance *and explained the purpose for which admittance is desired.*" (Emphasis added.) 374 U.S. 23, 37 n.9, 10 L. Ed. 2d 726, 740 n.9, 83 S. Ct. 1623, 1632 n.9.

Prior to *Ker,* California courts had engrafted a series of exceptions onto the statutory requirement to announce the purpose for which admittance is demanded. A five-to-four majority of the *Ker* court held:

> "[I]n the particular circumstances of this case the officers' method of entry, sanctioned by the law of California, was not unreasonable under the standards of the Fourth Amendment as applied to the States through the Fourteenth Amendment." 374 U.S. 23, 40-41, 10 L. Ed. 2d 726, 742, 83 S. Ct. 1623, 1634.

A careful reading of the opinions in *Ker* reveals that the majority of the court did not address whether the Constitution itself required police to announce their authority and purpose. California's statute required police to do so. The majority went on to consider whether the exceptions engrafted onto the statute by California courts

offended constitutional standards of reasonableness secured by the fourth amendment. The majority found that the officers reasonably believed that the defendant was in possession of narcotics which could easily have been destroyed once the defendant was informed of the presence of police. The court also found that the defendant's furtive conduct in eluding the police before the arrest was grounds for the police to reasonably believe that the defendant was expecting them, thus making an announcement of authority and purpose a superfluous gesture. In so finding, the majority concluded that the two exceptions, recognized by California courts in interpreting their own statute, did not violate the reasonableness clause of the fourth amendment. Because the California statute required an announcement, the majority did not have to consider whether announcing authority and purpose is merely one of many factors to be weighed in ascertaining if an entry to arrest or search is constitutionally reasonable, or whether the Constitution affirmatively requires an announcement, absent certain exigent circumstances.

To be sure, the four-member minority, in determining that the exigent circumstances in *Ker* did not justify the failure of police to announce their authority and purpose, did state quite broadly:

"Even if probable cause exists for the arrest of a person within, the Fourth Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the

officers in the belief that an escape or the destruction of evidence is being attempted." 374 U.S. 23, 47, 10 L. Ed. 2d 726, 746, 83 S. Ct. 1623, 1636.

By concluding that the United States Supreme Court has not expressly elevated to a constitutional requirement the practice of announcing authority and purpose, we do not mean to devalue its importance. Although the mere failure of police to announce their authority and purpose does not *per se* violate the Constitution, it may influence whether subsequent entry to arrest or search is constitutionally reasonable. The function of the requirement to announce authority and purpose is to notify the person inside of the presence of police and to afford the person an opportunity to respond, so that violence can be averted and privacy protected.

This case is not one in which police calculatedly refrained from announcing their presence and purpose in the course of either violently or stealthily entering a suspect's home. Uncontroverted testimony indicates that the officers knocked on the door for 10 minutes in an attempt to notify the defendant of their presence and of their intention to arrest him for the Iowa burglary. Upon receiving no response, they asked the manager to call the owner of the building so that they might enter to arrest the defendant. When the owner arrived, the officers again knocked on the door for five minutes, giving the defendant another opportunity to respond before the owner unlocked the door. Officer Barker testified that he could not recall whether or not he had announced his authority and purpose upon entering. It is reasonable, from the officers' perspective at that time, after two rounds of prolonged knocking at the door, that another effort to notify the defendant of their presence would have been a superfluous and futile gesture.

We hold that the officers, in accordance with Illinois

law, used necessary and reasonable force in entering the defendant's apartment to make the arrest, and that the mere failure to announce their authority and purpose did not, under the circumstances, violate the standards of reasonableness required under the fourth amendment.

Accordingly the judgment of the appellate court is reversed, and the judgment of the circuit court of Rock Island County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*