THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LENORA CONNER, Defendant-Appellant.

First District (1st Division)   No. 77-1662

Opinion filed December 4, 1978.

George C. Howard and P. Scott Neville, Jr., both of Howard, Mann & Slaughter, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Carol A. Kearney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant Lenora Conner was indicted for possession of more than 30 grams of a controlled substance. She filed a motion to quash the search warrant and suppress the evidence on the basis that the evidence obtained was the result of an illegal search. Chicago police officers executed the search warrant by entering her home through a second-floor window. They did not announce their office and purpose. The motion was denied and after a jury trial, defendant was convicted as charged. She was sentenced to serve 5 to 15 years in the penitentiary. She appeals, arguing that the trial court erroneously ruled that exigent circumstances obviated the requirement that the arresting officers announce their authority and purpose while executing the search warrant.

We reverse.

On December 16, 1973, officer James Ahern obtained a search warrant for defendant Lenora Conner's home, located at 3648 South Martin Luther King Drive, Chicago. The warrant was based on information given by a reliable informant who had been present when a shipment of heroin was delivered there earlier that day.

At approximately 5:30 a.m. the next day, Chicago police officers executed the search warrant. The officers made an unannounced, forced entry into the premises by breaking through a second floor bedroom window. Access to the second floor was made possible through the use of ladders provided by the Chicago Fire Department. Police officers believed that the unusual method of executing the search warrant was necessitated by the fortress-like quality of the premises and the presence of easily disposable heroin.

Officer Ahern, the first police officer to enter the premises, described it as follows. The house is a three-story, brick building with a basement. The front basement door is made of approximately one-half inch thick steel. A set of burglar bars are situated in front of the door. The back basement door is also secured by a set of burglar bars. The first floor front door is likewise secured by a set of burglar bars and inside, approximately four feet down the hallway, is a second set of burglar bars. Officer Ahern further testified that every window on the first floor is also secured by burglar bars.

During the subsequent jury trial, defendant testified that all doors and first floor windows were secured with burglar bars. She further testified

that at the time the search warrant was executed, she had 12 dogs on the premises. The dogs were a combination of German Shepherds and Great Danes. On a previous raid, police officers were forced to shoot four of the animals.

Officer Ahern testified that as he entered the bedroom through the second floor window, he observed the defendant reach to the floor, pick something up and run to the bedroom door. As she ran, she threw a plastic bag toward the window. Officer Ahern retrieved the plastic bag which was later determined to contain 32 tinfoil packets of heroin. A search of a bedroom closet uncovered a cardboard box containing four additional bags of heroin. On cross-examination, Officer Ahern stated that he did not knock on the door nor did he announce his office and purpose prior to entering the premises.

Defendant filed a motion to quash the search warrant and suppress the evidence seized. Alleged was that the police officer's unannounced, forced entry violated defendant's constitutional rights and resulted in an illegal search. The motion was denied. A jury subsequently convicted defendant for possession of more than 30 grams of a controlled substance. She was sentenced to serve 5 to 15 years in the Department of Corrections and has since filed this appeal.

On appeal, defendant argues that the trial court erred in denying defendant's motion to quash and suppress inasmuch as there were no exigent circumstances which would have permitted the unannounced, forcible entry by police officers.

We agree. In *People v. Conner* (1977), 56 Ill. App. 3d 565, 371 N.E.2d 106, a case involving the same defendant and premises, we were presented with an almost identical factual situation. There, defendant was again charged with possession of heroin in violation of section 402 of the Controlled Substance Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1402). The arrest was the result of the execution of a search warrant on the premises. Entry to the premises was also made through a second-floor window, only this time by using a snorkel truck borrowed from the Chicago Fire Department. The evidence was later suppressed on a motion by defendant and we affirmed, holding that the fortress-like qualities of the premises, coupled with probable presence of easily disposable heroin did not create an exigency that obviated the requirement that the officers announce their authority and purpose when executing the search warrant.

In *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067, our supreme court held that while the failure of police officers to announce their authority and purpose does not *per se* violate the constitution, it may influence whether subsequent entry to arrest or search is constitutionally reasonable.

In *Wolgemuth* officers knocked on the door of the apartment, where

defendant was believed to be staying, for 10 minutes, in an attempt to notify him of their presence and intention to arrest him for burglary. Upon receiving no response, they summoned the owner of the building. With the owner present, the officers knocked on the door again for approximately five minutes before the owner, with a pass key, admitted them into defendant's apartment where the arrest was made. In upholding the arrest, the court concluded that the mere failure to announce their authority and purpose did not, under the circumstances, violate the standard of reasonableness required under the fourth amendment. The court specifically noted that it was not dealing with a case where the "police calculatedly refrained from announcing their presence and purpose in the course of either violently or stealthily entering a suspect's home."

■■ ■ The conduct of the police officers in the present case was not constitutionally reasonable. Here, they executed the search warrant by stealthily entering defendant's home through a second-floor window. It is undisputed that at no time did they attempt to knock on any door or announce their authority and presence. As we held in the previous *Conner* case, the fortress-like qualities of the premises, even when coupled with the probability of easily disposable heroin, did not make the entry by police officers within the standards of reasonableness required under the fourth amendment. Every citizen has a right to keep his home secure against intruders even if it means going to the elaborate extremes taken by defendant. Further, there is no evidence that defendant was expecting the police at the time of the breakin and was attempting to dispose of the evidence as in *Ker v. California* (1962), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623. The State's argument that defendant was expecting the police "at all times" is without merit.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

O'CONNOR, J., concurs.

Mr. JUSTICE BUCKLEY, dissenting:

On its face, an unannounced, night-time, second-story breakin by police appears to constitute a clear violation of the right of citizens to be secure in their homes from unreasonable searches and seizures. As the majority states, the mere facts that the object of the search is an easily destroyed commodity and that the premises to be searched present obstacles do not constitute circumstances which would render such an entry reasonable by constitutional standards nor constitute exigent

circumstances that would justify a departure from the standards of section 108—8 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108—8). Such an entry is by its nature potentially dangerous to occupants of the dwelling as well as police and constitutes the most drastic sort of invasion of privacy by the State. Only under the most compelling circumstances could such an action be reconciled with constitutional and statutory protections.

I believe, however, that certain facts whose existence and significance were overlooked by the majority establish this case as a virtually unique instance where such compelling circumstances did exist, and that affirmance of the judgment of the trial court is firmly supported by the decisions of the courts of this State.

The statutory standard for execution of a search warrant is stated in section 108—8 of the Code of Criminal Procedure as follows:

"All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute a search warrant." Ill. Rev. Stat. 1977, ch. 38, par. 108—8.

This standard is identical to that provided for effecting an arrest under section 107—5(d) (Ill. Rev. Stat. 1977, ch. 38, par. 107—5(d)), which was discussed in detail by the Illinois Supreme Court in its decision in *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067. In *Wolgemuth*, the defendant argued for reversal of his conviction on the grounds that evidence obtained pursuant to his arrest should have been suppressed because the manner in which the arrest was effected violated his right to be secure against unreasonable searches and seizures. The arresting officers had entered his apartment without announcing their authority and purpose, although they had first knocked at the door before obtaining a pass key and admitting themselves.

The court stated that the statutory standard for effecting arrests does not embody a requirement that an officer entering a building announce his authority and purpose. It follows that the identical language in the statute governing execution of search warrants also does not embody such a requirement.

The court in *Wolgemuth* then stated:

"Therefore, if we are to hold that the officers were required to state their authority and purpose before entering the defendant's apartment * * * we must find either that the fourth amendment requires an announcement as an essential element of a reasonable search and seizure, or that, under the circumstances in this case, the failure to announce rendered the entry constitutionally unreasonable." *Wolgemuth*, 69 Ill. 2d 154, 162.

The court then reviewed pertinent decisions of the United States

Supreme Court, including *Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623, which it described as "the Supreme Court case most readily cited for the proposition that the fourth amendment to the Constitution incorporates the announcement requirement." (69 Ill. 2d 154, 163.) The Illinois Supreme Court concluded, however, that "the United States Supreme Court has not expressly elevated to a constitutional requirement the practice of announcing authority and purpose * * *." 69 Ill. 2d 154, 166.

In affirming Wolgemuth's conviction, the court stated the rule of law by which this court is bound:

"* * * Although the mere failure of police to announce their authority and purpose does not *per se* violate the Constitution, it may influence whether subsequent entry to arrest or search is constitutionally reasonable. The function of the requirement to announce authority and purpose is to notify the person inside of the presence of police and to afford the person an opportunity to respond, so that violence can be averted and privacy protected." 69 Ill. 2d 154, 166.

The facts in *Wolgemuth* are readily distinguishable from those now before this court, but the rule of law announced in *Wolgemuth* cannot be ignored. That rule precludes this court from summarily holding a search unconstitutional simply because the police failed to announce their authority and purpose. On the contrary, we are required to consider such a failure only as one circumstance affecting a determination of reasonableness. In doing so the dual function of such an announcement as providing an opportunity to avert violence and protect privacy must be borne in mind.

This rule is entirely consistent with the verbal formulation employed by this court in prior decisions, that "[f]orced entries to execute search warrants made without a prior announcement of authority and purpose are prohibited unless exigent circumstances exist at the time of the entry." *People v. Richard* (1975), 34 Ill. App. 3d 621, 625-26, 339 N.E.2d 400.

This rule has been applied to uphold convictions based on evidence seized in a search effected by a forcible entry without announcement of authority and purpose where the police knocked, but the door was not promptly opened and the object of the search was an easily disposed of narcotic (*People v. Hartfield* (1968), 94 Ill. App. 2d 421, 237 N.E.2d 193; *People v. Jackson* (1976), 37 Ill. App. 3d 279, 345 N.E.2d 509). Reversal, however, has been required where a forcible unannounced entry was based solely on the fact that the object of the search was an easily destroyed narcotic (*People v. Stephens* (1974), 18 Ill. App. 3d 817, 310 N.E.2d 755; *People v. Richard*). In *Richard*, this court explained that

the crucial distinction between its facts and those in *Hartfield* and *Ker* was that "[t]here was no prior conduct of defendant to suggest to the officers that an announcement would result in destruction of evidence." *Richard*, 34 Ill. App. 3d 621, 626.

The conclusion that must be drawn is that evidence of prior conduct indicating a likelihood that the defendant would respond to an announcement of authority and purpose by hastily destroying easily destroyed narcotic evidence must be considered as a factor in determining whether there were exigent circumstances that would justify an unannounced forcible entry. If the likelihood evidence would be destroyed is very great, then unannounced forcible entry is justified. To hold otherwise would render the requirement that evidence of prior conduct be considered a meaningless, academic exercise.

Accordingly, although the majority is correct in reiterating the statement of this court in *People v. Conner* (1977), 56 Ill. App. 3d 565, 371 N.E.2d 106, that the fortress-like qualities of a dwelling, coupled with probable presence of an easily disposable narcotic cannot justify an unannounced forcible entry, the majority errs in failing to consider other facts regarding the likelihood of destruction of the narcotic evidence which was the subject of the search.

In contrast to the prior case involving the same defendant and a similar search for heroin at the same premises, in this case the hearing on defendant's motion to suppress the evidence obtained in such a search resulted in denial of defendant's motion and a trial on the merits followed. As a result, this court has before it not only the findings of fact from the hearing on the motion to suppress, which may not be disturbed unless contrary to the manifest weight of the evidence (*People v. Ledferd* (1967), 38 Ill. 2d 607, 232 N.E.2d 684), but also the testimony produced at trial, which may also be considered in reviewing the disposition of defendant's motion to suppress (*People v. Braden* (1966), 34 Ill. 2d 516, 216 N.E.2d 808). In view of the rule of law derived from prior decisions, it is clear that this court is required to consider all of the facts found and evidence produced which might establish prior conduct indicating a likelihood that this defendant would have attempted to destroy evidence had the police not made an unannounced forcible entry.

In the present case the circuit court concluded that entry by conventional means and an announcement of purpose and authority would merely have given occupants of the defendant's premises an opportunity to dispose of incriminating evidence. It did so after hearing the following testimony:

First, the defendant kept buckets of water near the toilet in her

apartment which could be used to flush down heroin in the event the police shut off her water. Second, there had been two prior searches of defendant's premises, one of which was frustrated when someone set several of the defendant's dozen or so German Shepherd-Great Dane dogs upon the police and they were compelled to shoot four of the animals. Third, there were mirrors mounted in the defendant's bedroom which made it possible to watch the front of the building without approaching a window.

This evidence must be added to the evidence of the building's fortress-like security measures and the informant's statement upon which the search warrant was predicated that the defendant had the preceding day received a shipment of heroin for which she paid more than $12,000. Whereas the fortress-like quality of the building and the fact that the object of the search was heroin establish only a possibility that the object of the search would be disposed of before police could discover it, the buckets, the dog incident and the mirrors establish a strong likelihood that such disposal would be attempted. Such a likelihood would excuse the normal announcement of authority and purpose because such an announcement could serve to provide a few extra crucial seconds for the building's occupants to effect the disposal of heroin.

Moreover, the security measures employed by defendant take on an antipolice rather than antiburglar character when the evidence is viewed as a whole. As a result, it appears likely that the defendant anticipated a police intrusion at any moment, so that an announcement by police of their authority and purpose would have been a mere declaration of the obvious.

The correctness of the above conclusions can be demonstrated by other testimony heard by the circuit court in this case. That any delay in effecting a search would be used to dispose of evidence is strongly indicated by testimony of one police officer that every time he entered defendant's building by the front door to execute a search warrant he heard the sound of a toilet flushing. Testimony by the first police officer to enter defendant's building for the search here in issue that the defendant immediately attempted to throw a bag containing heroin out of the window not only indicates she was ready at a moment's notice to dispose of evidence, but also establishes that she was expecting not burglars but police.

Accordingly, I believe that the evidence in this case establishes a course of conduct by the defendant prior to the search here in question which indicated a probability that evidence would be disposed of if police attempted to execute the search in any more conventional manner.

A man's house is his castle, and if he chooses he may fortify it, but he remains always subject to the law. If he demonstrates by his conduct that he will use his fortifications to evade the law, his challenge must be met

unless we are to revert to an era of robber-barons and patchwork principalities.

For the foregoing reasons, I respectfully dissent.