THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DANNY RAY WOLGEMUTH, Defendant-Appellant.

Third District    No. 75-195

Opinion filed October 29, 1976.—Rehearing denied December 1, 1976.

Robert Agostinelli, Richard Steck, and Michael Pelletier, all of State Appellate Defender's Office, of Ottawa, for appellant.

James E. Hinterlong, of Illinois State's Attorneys Association, of Ottawa, for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury trial the defendant, Danny Ray Wolgemuth, was convicted of unlawful possession of a controlled substance. The defendant was sentenced by the circuit court of Rock Island County to a term of imprisonment of not less than one year nor more than three years.

Defendant was indicted for unlawful possession of less than 200 grams of a substance containing a derivative of barbituric acid, a violation of the Controlled Substance Act. (Ill. Rev. Stat. 1973, ch. 56½, par. 1402(a)(5).) Defendant moved to suppress all of the evidence against him. The contraband was seized by police when they entered an apartment occupied by defendant after prevailing upon the building owner to open the apartment door for them.

At the hearing on defendant's motion to suppress, the only evidence presented was the testimony of Officer Donald Barker of the Rock Island City Police Department, who had been called by the defense. Officer Barker testified that he had seen a warrant issued by a court in Keokuk, Iowa for the arrest of Danny Ray Wolgemuth for burglary. The Iowa authorities used this arrest warrant to obtain an Illinois search warrant for a residence where they had expected to find Wolgemuth and the fruits of a burglary. The search authorized by the Illinois search warrant proved fruitless. The Iowa police, assisted by Barker, gained entry into the specified residence by climbing through a window but found nothing. Apparently, the Iowa authorities took both the Illinois search warrant and the Iowa arrest warrant back to Keokuk, Iowa when they left.

The next day Mrs. Helen Allen, a parole officer, relayed to Barker a tip that she had received from an anonymous informer who was unknown to Barker. Barker learned from this tip that Wolgemuth resided with a female parolee at a specific address in Rock Island. Barker, Mrs. Allen and Officer Smiley went to the address and climbed the stairs of the building to reach the door of a rear apartment. They knocked on the door for about 10 minutes but no one responded.

The officers checked with some neighbors who indicated they had seen people fitting the descriptions offered by the police going into, but not coming out of the apartment. According to Barker's testimony, these neighbors did not know whether anyone had stayed in the apartment that morning, but they believed the people still lived there.

The officer then went to the manager of the apartment building and had him call the owner. With the owner present the officers knocked on the door a second time for about five minutes. No one responded and no sounds came from inside. The owner then admitted the police. At the hearing Officer Barker did not remember whether any statement was made by the police announcing their authority or purpose as they entered the apartment.

Inside the apartment the police walked through a living area into a bedroom where they found Danny Wolgemuth asleep in a bed with a female parolee. As Officer Smiley took the defendant into custody Officer Barker noticed a table at the foot of the bed. Plastic pill bottles without prescription labels attached were on top of the table. Barker also stepped on pills scattered on the floor which appeared similar to those in the bottles. On closer inspection the officer recognized the pills contained in the bottles as controlled substances available by prescription. Officer Barker thought Wolgemuth close enough to the bottles to grab them. The officer then seized the pill bottles.

At the conclusion of Barker's testimony the People presented no evidence. The court then denied the motion to suppress and the case proceeded to trial. During the trial Helen Allen, Donald Barker and Richard Smiley testified to substantially the same facts disclosed by Barker at the hearing on the motion to suppress.

The defendant contends that the trial court erred when it failed to suppress evidence found in the apartment occupied by him. More particularly, the defendant urges the entry into the apartment was constitutionally impermissible and that therefore his subsequent arrest and the seizure of the drugs were improper.

The People contend the trial court properly denied defendant's motion to suppress since the evidence was found in plain view as an incident to a lawful arrest. It should be noted that since the drugs were in plain view, there was no search incident to the defendant's arrest. Furthermore, the validity of the defendant's arrest depends initially on the propriety of the arresting officers entry into the premises and subsequent search thereof. *Morrison v. United States*, 104 U.S. App. D.C. 352, 355, 262 F.2d 449, 452 (1958).

The general subject of warrantless arrests has received some attention by the United States Supreme Court in recent years. (*United States v. Watson*, 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820; *Gerstein v. Pugh*, 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854; *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (White, J., dissenting); *Jones v. United States*, 357 U.S. 493, 2 L. Ed. 2d 1514, 78 S. Ct. 1253.) None of the foregoing cases deal specifically with the issue presented on this appeal,

but since they do discuss related issues they are of significance both in illustrating the principles involved and in providing a basis for applying the principles to different factual situations.

Not only are we concerned with a warrantless arrest, but in the first instance we are concerned with a warrantless entry and a search of the premises as a condition prior to the arrest itself. The remarks of Mr. Justice Stewart in *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (White, J., dissenting), are relevant in the resolution of the principal problem raised on this appeal, namely, the propriety of a warrantless entry into a private dwelling. In dicta he observed:

> "It is clear, then, that the notion that the warrantless entry of a man's house in order to arrest him on probable cause is per se legitimate is in fundamental conflict with the basic principle of Fourth Amendment law that searches and seizures inside a man's house without warrant are per se unreasonable in the absence of some one of the number of well defined "exigent circumstances." (403 U.S. 443, 477-78.)

He also noted:

> "If we were to agree with Mr. Justice White that the police may, whenever they have probable cause, make a warrantless entry for the purpose of making an arrest, * * * then by the same logic *any* search or seizure could be carried out without a warrant, and we would simply have read the Fourth Amendment out of the Constitution. Indeed, if Mr. Justice White is correct that it has generally been assumed that the Fourth Amendment is not violated by the warrantless entry of a man's house for purposes of arrest, it might be wise to re-examine the assumption. Such a re-examination "would confront us with a grave constitutional question, namely, whether the forceful nighttime entry into a dwelling to arrest a person reasonably believed within, upon probable cause that he had committed a felony, under circumstances where no ·reason appears why an arrest warrant could not have been sought, is consistent with the Fourth Amendment." (403 U.S. 443, 480.)

See *Jones v. United States*, 357 U.S. 493, 2 L. Ed. 2d 1514, 78 S. Ct. 1253, where the government argued that a 9 p.m. warrantless entry and search of Jones' home was justified since the police had probable cause to believe he was committing a felony. The court did not consider this question on its merits since the issue was not raised because the proof showed that the entry was for the purpose of a search not an arrest.

In two recent decisions the United States Supreme Court specifically reserved its decision on the limits or conditions under which a warrantless entry into a premises for making a warrantless arrest is appropriate. In

*United States v. Santana*, ___ U.S. ___, 49 L. Ed. 2d 300, 96 S. Ct. 2406, and *United States v. Watson*, 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820, the court held that where the arresting officer had probable cause to believe the person arrested had committed a felony the arrest of such person in a public place was proper without an arrest warrant. The principal issue raised in both cases was the propriety of such procedure, *i.e.*, a warrantless arrest, where there were no exigent or emergency circumstances. In each case the court ruled that exigent circumstances did not have to exist before a warrantless arrest could be made on probable cause and indicated that such procedure was appropriate in a public place, *i.e.*, a restaurant in the *Watson* case and in a person's doorway in the *Santana* case.

■■ At the outset we believe it useful to distinguish the right to seize contraband goods and papers under the authority of a search warrant and the authority to make a seizure under a warrant of arrest. Under the latter a search may follow as an incident to the arrest under warrant whereas a search warrant is a writ of discovery and the arrest of the offender, if any, follows the discovery as an incident ancillary to it. 1 Varon, Searches, Seizures and Immunities 218 (1961).

Most questions involving the Fourth Amendment relate to search warrants authorizing the search of premises for the purpose of discovering or locating personal property and its seizure. The Fourth Amendment to the United States Constitution provides as follows:

> "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Illinois Constitution contains similar language:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. 1, §6.

We believe the language of the Federal and State constitutions supports the proposition that the prohibition against unreasonable searches and seizures applies to seizures of the person as well as seizures of property. The language of the Fourth Amendment does not distinguish between "persons" and "things" in guaranteeing the right to be secure against unreasonable searches and seizures. By its own terms the Federal and

State constitutions require that, whether persons or things are to be seized, the warrant must describe the *place* to be searched.

It may be useful therefore to consider the rules which have evolved relative to the right of the police to enter a dwelling for the purpose of seizing an object other than a person. The general rule is that police officers must obtain a search warrant before entering a dwelling for the purpose of seizing an object other than a person. (*Johnson v. United States*, 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367; *Agnello v. United States*, 269 U.S. 20, 70 L. Ed. 145, 46 S. Ct. 4.) A prior judicial determination must be sought and obtained by the police that there is probable cause to believe the object sought is within a specific place. The requirement of a search warrant as a prior judicial determination has been waived where delay would frustrate the purpose of the search. On this basis the doctrine of exigent or exceptional circumstances has evolved. *Jeffers v. United States*, 342 U.S. 48, 96 L. Ed. 59, 72 S. Ct. 93; *McDonald v. United States*, 335 U.S. 451, 93 L. Ed. 153, 69 S. Ct. 191; *Johnson v. United States*, 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367.

■■ In general therefore, the rule has evolved that the police may not enter a dwelling to search for things without a warrant on probable cause in the absence of exigent circumstances. If the entry is to effect an arrest the same rule should apply. As observed earlier, the court in *United States v. Watson*, 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598, held that exigent circumstances need not exist to authorize a warrantless arrest for probable cause in a public place. However, Justice Powell, in his separate concurring opinion in the *Watson* case, recognized the anomaly in requiring the existence of exigent circumstances to support a warrantless search when equivalent circumstances were not required to justify a warrantless arrest. However, according to Justice Powell, the common law had long permitted this difference even though the language of the Constitution did not necessarily support such difference.

In *Dorman v. United States*, 140 U.S. App. D.C. 313, 435 F.2d 385 (1970), the Court of Appeals for the District of Columbia sitting en banc said that the Fourth Amendment requires scrutiny by a judicial officer before the police may enter a dwelling to effect an arrest unless exigent circumstances do not tolerate delay so as to justify a warrantless entry. The court set forth various factors to be considered in determining whether "exigent circumstances" are present so as to justify a warrantless entry. Included among these are: one, a grave offense is involved, particularly one that is a crime of violence; two, the suspect is reasonably believed to be armed; three, there exists not merely the minimum of probable cause that is required when a warrant has been issued but beyond that a clear showing of probable cause including "reasonably trustworthy information" to believe the suspect committed the crime

involved; four, strong reason exists to believe that the suspect is in the premises being entered; five, there is a likelihood the suspect will escape if not swiftly apprehended; six, whether the entry is forcible or peaceful; and seven, the time of entry (day or night). In *Dorman* the court held that the police were justified in entering defendant's home to arrest him without a warrant.

Although the United States Supreme Court has neither adopted nor approved of the rule announced in *Dorman*, the rule has been applied in subsequent Federal cases. The various factors enumerated are relevant in determining whether there existed exigent circumstances or an urgent need justifying the failure to secure a search warrant. See *United States v. Rosselli* (7th Cir. 1974), 506 F.2d 627; *Salvador v. United States* (8th Cir. 1974), 505 F.2d 1348; *United States v. Phillips* (9th Cir. 1974), 497 F.2d 1131; *United States v. Shye* (6th Cir. 1974), 492 F.2d 886; *Vance v. North Carolina* (4th Cir. 1970), 432 F.2d 984, and *People v. Accarino* (D.C. Cir. 1949), 179 F.2d 456.

Illustrating the application of the *Dorman* rule, the court in *Commonwealth v. Forde* (1975), ____ Mass. ____, 329 N.E.2d 717, rejected its prior holding in *Commonwealth v. Phelps* (1911), 209 Mass. 396, 95 N.E. 868, and held:

> "The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy. It was just this sort of intrusion that the Fourth Amendment was designed to circumscribe by the general requirement of a judical determination of probable cause. [Citations.] The distinction between an entry to search and an entry to arrest is slight, for the latter may well be characterized as simply a search for a person rather than a search for things. [Citations.] Moreover, it can be argued that an entry to arrest is a far greater intrusion than an entry to search. [Citations.] The exigencies which would excuse the lack of an arrest warrant may differ from those supplying the excuse for the lack of a search warrant. In any event, the police are required to demonstrate that exigency. In short, we believe that the Fourth Amendment prohibits a warrantless entry into a dwelling to arrest in the absence of sufficient justification for the failure to obtain a warrant. While this conclusion departs from the old law of the Commonwealth, the same result has been reached by nearly every court to address the issue in recent years. [Citations.]" 329 N.E.2d 717, 722-23.

The State relies upon *People v. Mitchell*, 35 Ill. App. 3d 151, 341 N.E.2d 153, where the court rejected the defendant's contention that the police should have obtained a warrant before entering his home. In

*Mitchell* two police officers knocked on defendant's door and when defendant opened it, the officers arrested him. While the *Mitchell* case preceded *United States v. Santana*, ___U.S. ___ 49 L. Ed. 2d 300, 96 S. Ct. 2406, discussed previously, we believe that *Mitchell* is in harmony with the rule and the facts presented in *Santana*. However, in *Santana* the Supreme Court reserved its decision on the limits or conditions under which a warrantless entry into a premises for making a warrantless arrest is appropriate, the issue presented to this court for review.

■■ Applying the *Dorman* standards to the instant appeal, we conclude the circumstances did not justify a warrantless entry. At the outset we note the officers did apply for a search warrant the previous day, which warrant authorized the entry into other premises for the purpose of locating defendant and stolen property. The crime for which defendant was sought was not a crime against a person nor a crime of violence. The police had no reason to believe that the defendant was armed. There was ample opportunity for the officers to apply for a warrant. Nor do we believe that the police had a strong reason to believe the defendant was in the premises being entered. The record shows only that the basis for this entry was a tip from an anonymous source. No showing of reliability has been offered to demonstrate the strong probability that the police had reason to believe the defendant was in the premises being entered. Nor was there any likelihood that the defendant would escape if not swiftly apprehended. When the police knocked on the door no sounds came from within, indicating no furtive movements. The manner in which the door to the apartment was opened we view as forcible.

■■ The requirement of a warrant as now generally understood rests primarily on the conception that it is for a judical officer and not the prosecutor or police to determine whether the security of our society, which is essential to the maintenance of a rule of law, requires that the right of privacy yield to a right of entry, search and seizure, and what limitation and specification of entry may be appropriate and reasonable. As stated by Justice Jackson in *Johnson v. United States*, 333 U.S. 10, 92 L. Ed. 436, 68 S.Ct. 367:

> "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime * * * The right of officers to thrust themselves into a home is * * * a grave concern, not only to the individual but to a society which chooses to dwell in reasonable

security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." 333 U.S. 10, 13-14.

■■■ Since the prosecution did not establish exigent circumstances, the trial court erred in denying the defendant's motion to suppress. Since the police discovered all the evidence submitted against defendant by entering the apartment in violation of his Fourth Amendment rights, we must reverse his conviction for unlawful possession of a controlled substance.

For the foregoing reasons the judgment of conviction of the circuit court of Rock Island County is reversed.

Judgment reversed.

ALLOY, P. J., and BARRY, J., concur.