(No. 50636.—)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. WILLIAM ABNEY, Appellee.

*Opinion filed June 20, 1980.*

160

GOLDENHERSH, C.J., and CLARK, J., dissenting.

William J. Scott, Attorney General, of Springfield, and Ronald C. Dozier, State's Attorney, of Bloomington (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Robert C. Perry and Jane F. Bularzik, of the State's Attorney's Appellate Service Commission, of Springfield, of counsel), for the People.

Gary G. Johnson, of Normal, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an interlocutory appeal from a suppression order of the circuit court of McLean County. (See 73 Ill. 2d R. 604(a)(1).) The appellate court affirmed (58 Ill. App. 3d 54), and we allowed the State's petition for leave to appeal. We have held the case under advisement pending the United States Supreme Court's decision in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, holding that the warrantless, nonexigent entry of a private residence, for the purpose of effectuating a felony arrest, is unconstitutional. With the benefit of that ruling, we now reverse.

On February 20, 1977, a Normal police officer was dispatched to Brokaw Hospital in Normal to interview a beating victim, Willie Jones. Jones told the officer that he had been struck by the defendant, William Abney, with an iron bar and a .9-millimeter pistol near Abney's home. Jones' injuries were evident. He also gave the police the address of Abney and told the police that Abney had walked toward his home after the beating. Two officers proceeded to Abney's residence. It was almost 6:30 p.m., and approximately 1½ hours had passed since the alleged beating. No warrant was obtained. The officers later testified that they knocked on the door of the defendant's residence with their weapons drawn, that they announced their identity, that the door swung open, that they entered the premises, and that a .9-millimeter bullet was seen in plain view on a couch. Later that evening, defendant walked into the Normal police station, was arrested, and related his version of the beating.

On February 22, 1977, defendant was charged with aggravated battery. On June 22, 1977, he filed a motion to suppress any testimony concerning the officers' viewing of the .9-millimeter bullet. The bullet is significant for two reasons. First, it matches the caliber of pistol allegedly

used in the beating. Second, Jones later testified that Abney had threatened him shortly before the beating by saying that the bullet had Jones' name on it. This threat allegedly was made in Abney's home, and Jones testified that Abney threw the bullet on the couch after making the threat.

The State opposed Abney's motion to suppress on the ground that the officers' entry was reasonable and that the bullet was spotted in plain view. (See *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 465, 29 L. Ed. 2d 564, 582, 91 S. Ct. 2022, 2037.) The court specifically found that Abney's door was unlocked but ruled that the entry was unlawful and that the sighting of the bullet was therefore also improper. The court's determination that the entry was unauthorized was based on *People v. Wolgemuth* (1976), 43 Ill. App. 3d 335, *rev'd on other grounds* (1977), 69 Ill. 2d 154, which held that a warrantless entry is not justified in the absence of exigent circumstances. The court, in granting Abney's motion, found no such circumstances.

In the appeal, we are asked to determine the validity of the officers' entry and the resultant viewing of the .9-millimeter bullet. Because the validity of the viewing is dependent on the validity of the entry (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 466, 29 L. Ed. 2d 564, 583, 91 S. Ct. 2022, 2038), we first address the issue of the officers' authorization to enter Abney's home.

The State has argued that the warrantless entry was justified because the officers had probable cause to believe that a crime had been committed and that Abney was home. This argument is foreclosed, however, by the Supreme Court's recent ruling in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371. Alternatively, the State argues that, if more than probable cause is required, exigent circumstances were present which justified the entry.

Prior to the United States Supreme Court's recent decision in *Payton*, it had not resolved the issue of "whether and under what circumstances an officer may enter a suspect's home to make a warrantless arrest" (*United States v. Watson* (1976), 423 U.S. 411, 418 n.6, 46 L. Ed. 2d 598, 605 n.6, 96 S. Ct. 820, 825 n.6; see *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 159-60, and cases cited therein). Federal courts of appeal and various State courts had reached different conclusions on the question. Some had required exigent circumstances. The leading case reaching this result was *Dorman v. United States* (D.C. Cir. 1970) (*en banc*), 435 F.2d 385, which was followed by our appellate court in *People v. Wolgemuth* (1976), 43 Ill. App. 3d 335, *rev'd on other grounds* (1977), 69 Ill. 2d 154. Other courts had held that probable cause alone justified a warrantless entry into a suspect's home. The most recent case holding that probable cause was sufficient was *People v. Payton* (1978), 45 N.Y.2d 300, 380 N.E.2d 224, 408 N.Y.S.2d 395, *rev'd* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.

In reversing two judgments of the New York Court of Appeals, the United States Supreme Court in *Payton* declared unconstitutional a New York statute which authorized the warrantless entry of a private residence "to make a routine felony arrest." (*Payton v. New York* (1980), 445 U.S. 573, 574, 578-79 n.9, 63 L. Ed. 2d 639, 643, 646 n.9, 100 S. Ct. 1371, 1374, 1376 n.9.) Illinois, the court noted, has a similar law. 445 U.S. 573, 598-99 n.46, 63 L. Ed. 2d 639, 658 n.46, 100 S. Ct. 1371, 1386 n.46; see Ill. Rev. Stat. 1977, ch. 38, par. 107—5(d).

Under review in *Payton* were the felony murder conviction of Theodore Payton and the narcotics conviction of Obie Riddick. Payton's arrest on murder charges followed two days of intensive police work. The murder had occurred in the course of a service station robbery

after which a man was seen fleeing with a rifle and wearing a ski mask. Payton's arrest was made possible when two eyewitnesses identified him as the killer, and one of them provided Payton's address. Although light and music emanated from within, the arresting officers were denied admittance when they proceeded to the address, without a warrant, and knocked on the metal door of the residence. The officers summoned assistance, and after 30 minutes the door was pried open with a crowbar. (*Payton v. New York* (1980), 445 U.S. 573, 576, 63 L. Ed. 2d 639, 645, 100 S. Ct. 1371, 1375.) Upon entering, Payton was not to be found, but a shell casing was found in plain view on a stereo. Following an extensive search of closets, drawers, and other parts of the residence, the officers discovered a shotgun, ammunition, a sales receipt for a Winchester rifle, and photographs of Payton with a ski mask. Payton surrendered the next day. *People v. Payton* (1978), 45 N.Y.2d 300, 305, 380 N.E.2d 224, 225-26, 408 N.Y.S.2d 395, 396-97.

In the case of Riddick, by contrast, the defendant was arrested more than two years after he allegedly committed two armed robberies in 1971. In June of 1973, Riddick was identified by the victims, and his address was learned in January of 1974. Without obtaining a warrant, police officers went to Riddick's residence on March 14, 1974. Riddick's three-year-old son opened the door in response to their knock, and Riddick could be seen sitting on a bed. The police entered, arrested Riddick, and searched in a drawer two feet from the bed. Narcotics and a hypodermic syringe were found therein, and Riddick was charged with narcotics violations. *Payton v. New York* (1980), 445 U.S. 573, 578, 63 L. Ed. 2d 639, 646, 100 S. Ct. 1371, 1376; *People v. Payton* (1978), 45 N.Y.2d 300, 307, 380 N.E.2d 224, 227, 408 N.Y.S.2d 395, 397-98.

In reversing the convictions of Payton and Riddick, the Supreme Court noted that the New York courts had made

no attempt to justify the entries as based upon exigent circumstances, and the court therefore did not offer a definition of such circumstances, although it stated that Payton's arrest could arguably be so justified. (*Payton v. New York* (1980), 445 U.S. 573, 582-83, 63 L. Ed. 2d 639, 648, 100 S. Ct. 1371, 1378.) The court limited itself to the question of whether probable cause is sufficient to justify the entries, holding that it is not. Starting with the premise that the physical entry of the home is the chief evil against which the fourth amendment is directed (citing *United States v. United States District Court* (1972), 407 U.S. 297, 313, 32 L. Ed. 2d 752, 764, 92 S. Ct. 2125, 2134), the court held that warrantless searches and seizures in the home are presumptively unreasonable (citing *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454-55, 29 L. Ed. 2d 564, 576, 91 S. Ct. 2022, 2032), that the fourth amendment applies equally to searches and seizures of persons and property, and that no constitutional difference exists between the intrusiveness of entries to search and entries to arrest. (*Payton v. New York* (1980), 445 U.S. 573, 585, 63 L. Ed. 2d 639, 650, 100 S. Ct. 1371, 1379-80.) In *Coolidge*, the court had ruled that warrantless searches are unconstitutional in the absence of exigent circumstances (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454-55, 29 L. Ed. 2d 564, 576, 91 S. Ct. 2022, 2032), and four members of the court, in *dicta*, expressed the opinion that the same exigency requirement is applicable to warrantless entries to arrest (403 U.S. 443, 477-78, 29 L. Ed. 2d 564, 589-90, 91 S. Ct. 2022, 2044). In *Payton*, the court adopted the view of those four justices, holding that a warrant is required to support a nonexigent entry into a private residence for the purpose of effecting a felony arrest. Because no warrants supported the arrests of Payton and Riddick, the court reversed the judgments of the New York Court of Appeals and remanded to that court for

further proceedings.

Upon first glance, the position adopted by the New York statute invalidated in *Payton* appears to be the position espoused by the applicable provisions of our arrest statute (Ill. Rev. Stat. 1977, ch. 38, pars. 107—1 through 107—14). Section 107—2(c) of the statute provides: "A peace officer may arrest a person when *** [h]e has reasonable grounds to believe that the person is committing or has committed an offense." (Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c).) Section 107—5(d) provides: "All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to make an authorized arrest." (Ill. Rev. Stat. 1977, ch. 38, par. 107—5(d).) When read together, it would appear to be the intention of the legislature that entries to arrest may be made if "reasonable grounds" or probable cause are present.

Although the opinions of this court which have upheld warrantless entries seem merely to echo the words of the statute, a close examination of the cases reveals that factors in addition to probable cause were present in each which rendered the police activity reasonable under the circumstances within the meaning of constitutional provisions governing the arrest of persons (U.S. Const., amend. IV; Ill. Const. 1970, art. I, sec. 6; see *People v. Morales* (1971), 48 Ill. 2d 396 (police sighted stolen goods in a garage and obtained consent from the owner of the building before entering); *People v. Johnson* (1970), 45 Ill. 2d 283 (defendant was seen in his home by the police before their entry); *People v. Sprovieri* (1969), 43 Ill. 2d 223 (police learned before their entry of the defendant's intention to flee the city); *People v. Barbee* (1966), 35 Ill. 2d 407 (police were in close pursuit of an armed suspect when entering)). Although this court in *Johnson, Sprovieri* and *Barbee* did not use the phrase "exigent circumstances" and even expressed some doubts about the exigent-circum-

stances requirement (see, *e.g., People v. Johnson* (1970), 45 Ill. 2d 283, 287-88), it appears that the principles of the exigent-circumstances rule were adopted in those cases and that the requirements of the rule, by virtue of constitutional restrictions, have been judicially engrafted upon the statute. The statute, as construed, is thus in compliance with the constitutional guidelines enunciated in *Payton.*

Because exigent circumstances must be present to justify a warrantless entry to arrest, we turn to the issue of whether such circumstances are present in the case now before us. We note initially that neither the facts nor the credibility of witnesses is questioned. The question of whether exigent circumstances are present is, therefore, a legal one (*United States v. Robinson* (D.C. Cir. 1976) (*en banc*), 533 F.2d 578, 580, *cert. denied* (1976), 424 U.S. 956, 47 L. Ed. 2d 362, 96 S. Ct. 1432), subject to consideration by this court *de novo.*

The circuit court, in a statement of its findings and conclusions, cited the appellate court opinion in *People v. Wolgemuth* (1976), 43 Ill. App. 3d 335, *rev'd on other grounds* (1977), 69 Ill. 2d 154, in support of its conclusion that exigent circumstances were not present. It did not, however, discuss what factors it determined to be relevant in deciding that exigent circumstances were not present. Nor did the United States Supreme Court in *Payton* attempt to define exigent circumstances, pointing out that the New York courts did not attempt to justify the entries there in question on that basis. (*Payton v. New York* (1980), 445 U.S. 573, 582-83, 63 L. Ed. 2d 639, 648, 100 S. Ct. 1371, 1378.) We, however, have reviewed prior decisions of this State and other jurisdictions, including those of the United States Supreme Court, and we now hold that the circuit court's decision to invalidate the entry and the resultant viewing of the .9-millimeter bullet is in error. Exigent circumstances here present militated

against delay and justified the officers' decision to proceed without a warrant. Additional factors also indicated that the officers acted in a reasonable fashion. We first address the question of exigent circumstances.

We consider it especially significant to note at the outset of our analysis that the officers who entered defendant's home were presented an unusual opportunity to quickly apprehend an armed suspect and thereby prevent his escape, avoid exhaustion of law-enforcement resources, and help ensure against further endangerment to the community. In this regard, certain factors are worthy of specific mention.

First, the officers' decision to proceed to defendant's residence without a warrant immediately followed receipt of the victim's statement only 1½ hours after the beating. The receipt of such information about a relatively recent offense could suggest to the officers a need for prompt action. (See, *e.g.*, *Dorman v. United States* (D.C. Cir. 1970) (*en banc*), 435 F.2d 385, 393 (warrantless entry upheld where made four hours after the offense); *People v. Barbee* (1966), 35 Ill. 2d 407, 408-12 (warrantless entry upheld where made two hours after the offense). Compare *Commonwealth v. Williams* (1978), 483 Pa. 293, 300, 396 A.2d 1177, 1180, *cert. denied* (Apr. 21, 1980), 48 U.S.L.W. 3674 (warrantless entry disapproved where made three years after the offense).) The situation presented did not rise to the level of a hot pursuit of the suspect (*United States v. Santana* (1976), 427 U.S. 38, 42-43, 49 L. Ed. 2d 300, 305, 96 S. Ct. 2406, 2409-10) or an entry made with probable cause to believe that the suspect entered the premises a few minutes before (*Warden, Maryland Penitentiary v. Hayden* (1967), 387 U.S. 294, 298, 18 L. Ed. 2d 782, 787, 87 S. Ct. 1642, 1645-46), but it did fall "within the spirit *** of the 'hot pursuit' exception" (*United States v. Robinson* (D.C. Cir. 1976) (*en banc*), 533 F.2d 578, 583, *cert. denied* (1976), 424 U.S. 956,

47 L. Ed. 2d 362, 96 S. Ct. 1432). As the court said in *Dorman v. United States* (D.C. Cir. 1970) (*en banc*), 435 F.2d 385, 393, a case involving a warrantless entry of a suspect's residence four hours after a robbery, "This was not a case of hot pursuit, unless that term is to be stretched beyond all reasonable meaning. But the ultimate underlying factors were similar to those involved in a case of hot pursuit." As in a case of hot pursuit, "[D]elay to obtain a warrant would have impeded a promising police investigation and conceivably provided the added time needed \*\*\* to avoid capture altogether." (*United States v. Robinson* (D.C. Cir. 1976) (*en banc*), 533 F.2d 578, 583, *cert. denied* (1976), 424 U.S. 956, 47 L. Ed. 2d 362, 96 S. Ct. 1432. Compare *State v. Olson* (1979), 287 Or. 157, 165, 598 P.2d 670, 674 (burglary suspect had no reason to believe that police knew of his participation in the offense and there therefore existed "no particular danger of his immediate flight"); *Laasch v. State* (1978), 84 Wis. 2d 587, 592, 267 N.W.2d 278, 282 ("any suggestion that the police feared the defendant would flee is dispelled by the fact that she had been released for approximately two weeks" following her initial arrest for the same offense).) The officers could reasonably believe that they were confronted with an emergency, and that belief was manifested in their quick response.

Second, and closely related to the fact that the officers acted promptly, there was no deliberate or unjustified delay by the officers during which time a warrant could have been obtained. (*United States v. Houle* (8th Cir. 1979), 603 F.2d 1297, 1300; *People v. Ramey* (1976), 16 Cal. 3d 263, 276, 545 P.2d 1333, 1341, 127 Cal. Rptr. 629, 637, *cert. denied* (1976), 429 U.S. 929, 50 L. Ed. 2d 299, 97 S. Ct. 335; *Commonwealth v. Forde* (1975), 367 Mass. 798, 807, 329 N.E.2d 717, 723.) Unlike the invalid warrantless search in *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 478, 29 L. Ed. 2d 564,

590, 91 S. Ct. 2022, 2044, for example, the officers did not contemplate their course of conduct for an extended period of time.

Finally, the need for prompt action was further made apparent by the belief that the suspect was armed and exhibited some sign of a violent character. (*United States v. Robinson* (D.C. Cir. 1976) (*en banc*), 533 F.2d 578, 583, *cert denied* (1976), 424 U.S. 956, 47 L. Ed. 2d 362, 96 S. Ct. 1432; *United States v. Shye* (6th Cir. 1974), 492 F.2d 886, 892; *Dorman v. United States* (D.C. Cir. 1970) (*en banc*), 435 F.2d 385, 393; *State v. Cook* (1977), 115 Ariz. 188, 193, 564 P.2d 877, 882; *People v. Barbee* (1966), 35 Ill. 2d 407, 411. Compare *United States v. Killebrew* (6th Cir. 1977), 560 F.2d 729, 734 (occupant not known to be dangerous); *State v. Olson* (1979), 287 Or. 157, 165, 598 P.2d 670, 674 (burglary suspect not known to be armed); *Commonwealth v. Williams* (1978), 483 Pa. 293, 300, 396 A.2d 1177, 1180, *cert. denied* (Apr. 21, 1980), 48 U.S.L.W. 3674 (rifle used in homicide was in possession of police prior to entry); *People v. Ramey* (1976), 16 Cal. 3d 263, 276, 545 P.2d 1333, 1341, 127 Cal. Rptr. 629, 637, *cert. denied* (1976), 429 U.S. 929, 50 L. Ed. 2d 299, 97 S. Ct. 335 (information available to arresting officer indicated that suspect no longer possessed stolen firearm).) The desirability of apprehending such an individual is obvious, and an officer's reaction should not be unduly criticized unless we are to encourage unreliable, time-consuming speculation as to whether more violence will occur while a warrant is sought.

In addition to the exigent circumstances set forth above, other factors were present which suggest that the officers acted reasonably. First, the officers were acting on "a clear showing of probable cause" (*Dorman v. United States* (D.C. Cir. 1970) (*en banc*), 435 F.2d 385, 392) based on the type of "reasonably trustworthy informa-

tion" (*Dunaway v. New York* (1979), 442 U.S. 200, 208 n.9, 60 L. Ed. 2d 824, 833 n.9, 99 S. Ct. 2248, 2254 n.9; *Beck v. Ohio* (1964), 379 U.S. 89, 91, 13 L. Ed. 2d 142, 145, 85 S. Ct. 223, 225) necessary to justify warrantless law enforcement activities. (*United States v. Robinson* (D.C. Cir. 1976) (*en banc*), 533 F.2d 578, 583, *cert. denied* (1976), 424 U.S. 956, 47 L. Ed. 2d 362, 96 S. Ct. 1432; *United States v. Shye* (6th Cir. 1974), 492 F.2d 886, 892.) The victim of the offense, with wounds apparent, explained the details of his beating to the officers in detail. Second, defendant was clearly identified as the assailant. (*Dorman v. United States* (D.C. Cir. 1970) (*en banc*), 435 F.2d 385, 393. Compare *United States v. Killebrew* (6th Cir. 1977), 560 F.2d 729, 733 ("uncertainty as to the identity of the occupant at the time of the entry").) Third, the victim's statement created strong reason to believe that defendant was in the premises entered. (*Dorman v. United States* (D.C. Cir. 1970) (*en banc*), 435 F.2d 385, 393. Compare *State v. McNeal* (W. Va. 1978), 251 S.E.2d 484, 488-89 (no reason for belief that the suspect was in the particular building entered); *State v. Cook* (1977), 115 Ariz. 188, 193, 564 P.2d 877, 882 ("the victim's information as to the suspect's whereabouts was insubstantial at best").) The victim here had told police that defendant had walked toward his home after the beating. It was almost 6:30 p.m., and it was only 1½ hours after the assault had occurred. The record is silent as to the length of the delay that would have been occasioned by obtaining a warrant at this hour. Finally, the entry here was peaceful. (*United States v. Shye* (6th Cir. 1974), 492 F.2d 886, 892; *Dorman v. United States* (D.C. Cir. 1970) (*en banc*), 435 F.2d 385, 394.) In fact, the circuit court specifically found that the door to defendant's residence was unlocked. Also, the record shows that the premises were burglarized one month after the beating, and defendant then told police

officers that the door lock was defective and had been that way for some time. This was not the type of forced entry that has led courts to disapprove warantless entries. *Miller v. United States* (1958), 357 U.S. 301, 2 L. Ed. 2d 1332, 78 S. Ct. 1190; *State v. McNeal* (W. Va. 1978), 251 S.E.2d 484, 488-89.

In summary and in light of the many decisions recognizing "that a warrantless entry by criminal law enforcement officials may be legal when there is a compelling need for official action and no time to secure a warrant" (*Michigan v. Tyler* (1978), 436 U.S. 499, 509, 56 L. Ed. 2d 486, 498, 98 S. Ct. 1942, 1950, citing *Warden, Maryland Penitentiary v. Hayden* (1967), 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642, and *Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623), we see no cause to hold invalid the entry here in question and the resultant viewing of the .9-millimeter bullet. We caution that each case must be decided on the basis of the facts presented. (*South Dakota v. Opperman* (1976), 428 U.S. 364, 375, 49 L. Ed. 2d 1000, 1009, 96 S. Ct. 3092, 3100.) The guiding principle is reasonableness under constitutional provisions governing searches and seizures. (*United States v. Chadwick* (1977), 433 U.S. 1, 9, 53 L. Ed. 2d 538, 547, 97 S. Ct. 2476, 2482; *Dorman v. United States* (D.C. Cir. 1970) (*en banc*), 435 F.2d 385, 389.) In determining whether law-enforcement officials acted reasonably in a given case, courts should be careful to judge the circumstances as known to the officials at the time they acted. (*People v. Clay* (1973), 55 Ill. 2d 501, 504.) Unknown and subsequent unanticipated events, such as the suspect's peaceful surrender in this case, should not be considered in assessing the propriety of the official's initial reaction. (*People v. Sprovieri* (1969), 43 Ill. 2d 223, 227; *People v. Barbee* (1966), 35 Ill. 2d 407, 411.) Finally, lest officials be given free reign, it should be remembered that warrantless police action "must be 'strictly circum-

scribed by the exigencies which justify its initiation' " (*Mincey v. Arizona* (1978), 437 U.S. 385, 393, 57 L. Ed. 2d 290, 300, 98 S. Ct. 2408, 2414, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 26, 20 L. Ed. 2d 889, 908, 88 S. Ct. 1868, 1882).

The judgments of the circuit and appellate courts are reversed, and the cause is remanded to the circuit court of McLean County for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE GOLDENHERSH, dissenting:

I dissent and would affirm the judgment of the appellate court. The majority recognizes "that warrantless searches and seizures in the home are presumptively unreasonable ***, that the fourth amendment applies equally to searches and seizures of persons and property, and that no constitutional difference exists between the intrusiveness of entries to search and entries to arrest." (81 Ill. 2d at 166.) Despite the presumption, it attempts to justify the warrantless entry into defendant's apartment on the ground that there were exigent circumstances. The record clearly demonstrates the contrary.

The testimony shows that at approximately 6:20 p.m. on the evening of the occurrence a police officer of the city of Normal was called to Brokaw Hospital. The officer interviewed a man who allegedly was beaten by defendant. The victim said that he knew defendant, that they had been friends, and that "the incident was revolving around a girl." After the victim received treatment for his injury he was escorted to the police station, where a statement was taken. Following the taking of the statement the investigating officer, accompanied by another police officer, went to "check to see if he [defendant] is still at his apartment." There was no effort to show how long it would have taken to appear before a judge and obtain a

warrant for the defendant's arrest. This court may take judicial notice of the fact that Normal is in McLean County in the Eleventh Judicial Circuit, which at that time had at least nine circuit judges and six associate circuit judges, and that five of the circuit judges and four of the associates resided in McLean County.

The record also shows that defendant was the tenant in the apartment in which the bullet was seen by the officers, and although the record does not show how long he had resided there prior to the occurrence, the testimony shows that he continued to reside there for a considerable period of time thereafter.

It is apparent that the police officers did not act on the belief that there were exigent circumstances which required prompt action. Had they believed that there was a need for prompt action, they or other members of the police department could have gone to defendant's apartment immediately upon hearing of the matter. That they felt that there was no urgency in making the arrest is shown by the fact that they waited until after the alleged victim had been taken to the station and interviewed. It is obvious that their failure to seek a warrant resulted not from a need for prompt action but from their conclusion, clearly erroneous, that no warrant was required.

Nor does the record support the majority's conclusion that there was "strong reason to believe" that defendant was present in the apartment (81 Ill. 2d at 172). The fact that he had been seen walking in the general direction of the apartment approximately 1½ hours earlier is hardly sufficient to justify the warrantless entry on the theory that he might still be present in the premises.

The majority concludes that we should not "encourage unreliable, time-consuming speculation as to whether more violence will occur while a warrant is sought." (81 Ill. 2d at 171.) It is much less desirable to encourage, with this type of decision, the violation of a defendant's constitu-

tional right to have the independent judgment of a judicial officer interposed between himself and the action of the arresting officer.

MR. JUSTICE CLARK joins in this dissent.