**Simmie WHITT, Plaintiff,**

v.

**CITY OF ROCKFORD, ILL., et al., Defendants.**

**No. 84 C 20116.**

United States District Court, N.D. Illinois, W.D.

Oct. 21, 1988.

---

Peter T. Sullivan, III, Daniel J. Cain, Sreenen & Cain, P.C., Rockford, Ill., for plaintiff.

Franklin C. Cook, Charles E. Box, Kathleen Elliott, City of Rockford Dept. of Law, Rockford, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

Before the court is defendants' motion for summary judgment. Plaintiff is suing the City of Rockford, its police chief and a number of its police officers for an alleged deprivation of his constitutional rights. Plaintiff filed this action pursuant to 42 U.S.C. § 1983 in connection with an incident which occurred on January 25, 1984 in Rockford, Illinois. The incident involved a warrantless entry by the police into an apartment where plaintiff resided. Plaintiff was shot by a Rockford police officer shortly after the entry.

### FACTS [1]

Five days before the entry into plaintiff's apartment, a woman was assaulted while shopping at O'Donnell's Foods on Rockford's west side. She had been struck in the face with a gun by a black woman accompanied by a black man. Witnesses observed the pair leaving in an older model green Chevrolet Impala with a shotgun being pointed out the window of the car by the driver.

A license check was run on the car. It indicated that the car was registered in the name of John Moore whose address was shown as 210½ Ogden, Rockford, Illinois. Defendant Officer Scheffels, who was investigating the incident, contacted Mr. Moore. Moore denied any participation in the incident at O'Donnell's saying that he had loaned his car to an acquaintance named Jeff. The victim of the crime disappeared and officers did not pursue the matter.

Late in the evening of January 25, 1984, a call came in for police assistance at 236 North Independence Avenue. Charles Blissit had notified the police that three black men had just been at that address. The three men were described as all being armed with one carrying a rifle. Blisset had been with the woman who was assaulted at O'Donnell's earlier in the week. He identified one of the armed men as the black male involved in the incident at O'Donnell's.

While the police were responding to the incident on Independence Avenue, there was a report of a shooting at 1827 Green Street, which is about five blocks from the Independence Avenue occurrence.[2] The victim, Roger Purifoy, was shot in the bathroom of his girlfriend's apartment. He told the police that the assailants were three black men, all of whom were armed, one of whom was carrying a rifle or shotgun type of gun.

Officer Scheffels was on duty the night of these two occurrences. He went to the vicinity of the Green Street incident al-

---

1. The following facts are gleaned from plaintiff's complaint and from affidavits and depositions of the parties.

2. It is not totally clear which event occurred first, whether the shooting on Green Street happened before the incident on Independence Avenue or vice versa. What is clear is that the events happened within minutes of each other. For the purposes of this opinion, it will be assumed that the incident on Independence Avenue preceded the shooting on Green Street.

though he did not talk to the victim or any witnesses. He did not go to the Independence Avenue incident. When he heard the information broadcast from the Independence Avenue incident, he responded by broadcasting the information he had acquired through his investigation of the O'Donnell's incident. The police gathered at John Moore's address. Moore's car was parked in front of the residence and there were lights on in his apartment.

Defendant Sergeant Roger Smith came to Moore's residence from the Green Street shooting. He decided they should attempt to gain entry to Moore's apartment consensually if possible but by force if necessary. Two of the officers were assigned to the front of the building while the other five converged on the rear entrance located at the top of some exterior stairs.

When the defendants got to the top of the stairs outside of the apartment, they heard loud and excited conversation from within the apartment. The individuals inside the apartment were discussing guns and were talking about a shooting. The defendants also heard the sounds of a shotgun being "jacked" and guns being played with.

Defendant Officer McDonald then knocked on the door and announced himself as the police. He repeated his knock and announcement, in response to which the door was opened from within. The individual who opened the door attempted to shut the door whereupon the officers forced the door open and moved inside the apartment into the kitchen area.

Immediately after entering the apartment, Officer McDonald noticed an adult male coming into the kitchen carrying a shotgun. Officer McDonald shot his handgun at the person carrying the shotgun wounding him in the arm. The person shot is plaintiff, Simmie Whitt.

Plaintiff alleges that defendants violated plaintiff's constitutional rights when defendants entered the apartment without a warrant and allegedly without probable cause or exigent circumstances. Defendants move for summary judgment arguing that probable cause and exigent circum-

stances were present when they entered the apartment. Defendants argue further that even if probable cause and exigent circumstances were not present, they are entitled to qualified immunity for their actions.

## OPINION

■ "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages." *Klein v. Ryan*, 847 F.2d 368, 371 (7th Cir.1988). "Under the purely objective qualified immunity standard adopted in *Harlow v. Fitzgerald*, 457 U.S. 800 [102 S.Ct. 2727, 73 L.Ed.2d 396] (1982), government officials may violate an individual's constitutional rights and still be shielded from liability if they could not reasonably be expected to know that the Constitution forbade their conduct. If their conduct did not 'violate clearly established ... constitutional rights of which a reasonable person would have known,' they are entitled to qualified immunity." *Bradshaw v. Zebella*, 1987 U.S. Dist. LEXIS 10166, 3 (N.D.Ill.1987) [1987 WL 19545, 1] (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738).

In the Bradshaw case cited above, Judge Alesia discussed the purposes of qualified immunity and more particularly, its purposes in the context of lawsuits against law enforcement officials. As Judge Alesia stated:

[q]ualified immunity for public officials is intended to accommodate two conflicting concerns. On the one hand is the desire to allow citizens to resort to damage suits to vindicate violations of constitutional rights. *See Harlow*, 457 U.S. at 814 [102 S.Ct. at 2736]. But the right to sue public officials for abusive conduct may be counterproductive if the "fear of personal monetary liability and harrassing litigation will unduly inhibit officials in the discharge of their duties." *Creighton*, 107 S.Ct. at 3038. By focusing on the objective reasonableness of an official's conduct in light of existing case law at the time the action is taken, the qualified immunity doctrine is designed

to weed out insubstantial suits before trial without limiting a citizen's right to seek relief for violations of clearly established rights. *Harlow,* 457 U.S. at 819 [102 S.Ct. at 2738].

The need to balance protection of officials from groundless suits against a citizen's right to seek damages for constitutionally protected rights is particularly acute when the right at issue involves matters of law enforcement. Frequently faced with situations requiring quick and decisive action, police officers do not always have time to consider whether a particular course of action might violate the delicate intricacies of some constitutionally protected right. Recognizing the danger of subjecting an officer to potential liability every time his on-the-scene assessment of probable cause later is found wanting in the deliberative calm of a pretrial suppression hearing, the Court has interpreted the qualified immunity defense to "provide ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* [475 U.S. 335], 106 S.Ct. 1092, 1096 [89 L.Ed.2d 271] (1986). Thus, the standard of qualified immunity, as applied to cases of alleged police misconduct, is whether "on an objective basis, it is obvious that no reasonably competent officer" would have taken the disputed action. *Id.*

*Bradshaw,* 1987 U.S. Dist. LEXIS 10166 at 4, 5 [1987 WL 19545 at 2].

"To overcome the defense of qualified immunity, the plaintiff must show that the officials violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' *Klein,* 847 F.2d at 371 (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738). In order for a right to be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Therefore, to resolve the qualified immunity question this court must determine whether on January 25, 1984 the law governing probable cause and exigent circumstances in the context of warrantless home entries was established with sufficient clarity such that "officers of reasonable competence could disagree" whether the law required a warrant to enter the apartment. *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

The Supreme Court in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), stated "it is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton,* 100 S.Ct. at 1380. The *Payton* Court further held that the presumption could be rebutted if probable cause and exigent circumstances were present at the time of the warrantless entry. *Payton,* 100 S.Ct. at 1380–82.

In analyzing whether probable cause exists, it is important to consider that the "determination of probable cause does not rest upon a technical framework; instead it depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Anderson v. Continental Ill. Nat'l. Bank and Trust,* 577 F.Supp. 872, 874–75 (N.D.Ill.1984) (citing *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949)). The Supreme Court has stated "probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed" and that the suspect committed the offense. *Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959).

■ In analyzing whether exigent circumstances exist, the court must determine "whether the exceedingly strong privacy interest in one's residence is outweighted by the risk that delay will engender injury,

destruction of evidence, or escape." *United States v. Acevedo*, 627 F.2d 68, 70 (7th Cir.1980). Factors which aid in making this determination include: (1) the gravity or violent nature of the crime with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a "clear showing" of probable cause; (4) strong reason to believe the suspect is in the premises; (5) the likelihood the suspect would escape if not immediately apprehended; and (6) the peaceful circumstances of the entry. *Dorman v. United States*, 435 F.2d 385, 392–93 (D.C. Cir.1970).[3] The *Acevedo* court recognized the above factors but "cautioned against a strict reliance on a checklist approach and emphasized that any analysis in the end would depend on the facts of the case and whether the officers acted reasonably in light of the facts known to them at the time they entered the residence."[4] *Bradshaw*, 1987 U.S. Dist. LEXIS 10166 at 11, 12 [1987 WL 19545 at 4].

In the *Bradshaw* case Judge Alesia also discussed exigent circumstances and its relationship to the qualified immunity defense.

> The test for determining exigent circumstances in the state and federal courts of Illinois therefore is applied on a case-by-case basis and requires a balancing of interests, i.e. weighing a resident's privacy interest against the interest of law enforcement officers in avoiding delay that will result in injury, destruction of evidence, or escape of a felon. The nature of the exigent circumstances test has significant implications for the qualified immunity defense. When there is

no bright line to guide an official's conduct, some accommodation must be made to protect him from unintended errors in judgment that may take on constitutional significance when the facts later are scrutinized in subsequent judicial proceedings. When the law itself is fact specific requiring assessment of a multitude of factors, none of which are determinative of the issue, and a balancing of various competing interests, the courts will require a close correspondence between the facts of the existing case law and the contested action before stripping the defendant officer of his right to qualified immunity. See *Benson v. Allphin*, 786 F.2d 268, 276 (7th Cir.), cert. denied, [479 U.S. 848] 107 S.Ct. 172 [93 L.Ed.2d 109] (1986). That is not to say an officer can act with impunity whenever faced with a novel situation. *Id.* at 276 n. 18. But the law is not clearly established for purposes of qualified immunity unless it has spoken to cases involving facts clearly analogous to those facing the defendant at the time he took his challenged action. See *Abel v. Miller*, 824 F.2d 1522, 1533 (7th Cir.1987); *Powers v. Lightner*, 820 F.2d 818, 821 (7th Cir. 1987).

*Bradshaw*, 1987 U.S. Dist. LEXIS 10166 at 12, 13 [1987 WL 19545 at 4].

Prior to January 1984 the Illinois Supreme Court did face a similar factual scenario in *People v. Abney*, 81 Ill.2d 159, 41 Ill.Dec. 45, 407 N.E.2d 543 (1980). In that case:

> the Court upheld the warrantless entry of the home of a suspect identified by the victim of an aggravated battery. Al-

---

**3.** "The Illinois Supreme Court also adopted the *Dorman* criteria in its first post-*Payton* decision addressing the issue of exigent circumstances for a warrantless in-house arrest of a felony suspect. *People v. Abney*, 81 Ill.2d 159, 169–72, [41 Ill.Dec. 45, 49–51] 407 N.E.2d 543, 547–49 (1980)." *Bradshaw*, 1987 U.S.Dist. LEXIS 10166 at 12 n. 3 [1987 WL 19545 at 4 n. 3].

**4.** *See also* Professor LaFave's discussion of the *Dorman* approach in 2 Wayne R. LaFave, Search and Seizure (1978). In that treatise Professor LaFave stated:

> It is not clear beyond question, however, that the *Dorman* approach is sound. The ultimate purpose of all Fourth Amendment standards is not to keep probative evidence out of criminal trials, but rather to keep police practices within constitutional limits, and this purpose is not served by a rule which cannot be applied correctly with a fair degree of consistency by well-intentioned police officers. It is thus appropriate to ask whether the *Dorman* rule is too sophisticated to be so applied, requiring as it does the making of on-the-spot decisions by a complicated weighing and balancing of a multitude of imprecise factors.

2 Wayne R. LaFave, Search and Seizure, § 6.1 at 390 (footnote omitted).

though the suspect was not home, the Court found exigent circumstances and permitted testimony as to incriminating evidence an arresting officer observed while in the house. Using the *Dorman* criteria, the Court based its finding on evidence that the officers went to the suspect's house within one-and-one-half hours of the crime. In addition to the prompt action of the police, the Court also noted that the lapse of time did not allow opportunity to obtain an arrest warrant before going to the suspect's home. The Court further noted that the officers had reason to believe the suspect was armed and violent thereby requiring prompt action, that the officers entered the home peacefully, that there was a clear showing of probable cause based on the victim's identification of his assailant as someone he knew, and that the police had strong reason to believe the suspect was at home.

*Bradshaw*, 1987 U.S. Dist. LEXIS 10166 at 14, 15 [1987 WL 19545 at 5].

As in *Abney*, the officers in this case entered the apartment shortly after receiving the reports about three armed men involved in a shooting and in an attempted home invasion. Thus, the officers were investigating crimes of violence and it does not appear there was time to obtain a warrant before going to Moore's apartment. Although the identification of Moore as one of the armed men was more tenuous than the identification in *Abney*, once the officers arrived at the apartment and heard the sounds of gunplay from within, the reasonableness of linking Moore to the Independence Avenue and Green Street incidents becomes more apparent. See *People v. Cobb*, 97 Ill.2d 465, 74 Ill.Dec. 1, 10, 455 N.E.2d 31, 40 (1983) ("[e]xigent circumstances may arise ... not only immediately after the perpetration of the crime, but also when additional facts justify immediate action"). This also solidified the officers' belief that Moore was armed and violent and provided the officers strong reason to believe Moore was at home. Finally, although it is hard to characterize the circumstances of the entry as peaceful, it appears the officers did knock and announce themselves in an attempt to gain entry by consent and peacefully. When the door was opened from within and then immediately closed, the officers forced their way in.

Given this factual scenario, officers of reasonable competence could have concluded that the law of probable cause and exigent circumstances as it existed in 1984 permitted defendants to enter Moore's apartment without a warrant. Therefore, the court concludes that defendants are entitled to qualified immunity on plaintiff's § 1983 claim. Accordingly, defendants' motion for summary judgment is granted, this case is dismissed in its entirety.