(No. 42942.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JUAN MORALES, Appellant.

*Opinion filed May 21, 1971.*

ARTHUR E. ENGELLAND and ROBERT S. BAILEY, both of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, ROBERT A. NOVELLE, Assistant State's Attorney, and NICHOLAS DE JOHN (Senior Law Student), of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

The defendant, Juan Morales, was jointly indicted with Marcial Feliciano for armed robbery. Their cases were severed. Morales was found guilty after a bench trial before the circuit court of Cook County, and he was sentenced to imprisonment for not less than five nor more than 10 years. On this direct appeal he challenges the validity of a search and seizure.

Early on the morning of January 5, 1969, an armed robbery occurred at a tavern at 2700 West Chicago Avenue. The tavern's owner, Frank Siwak, testified and identified the defendant as one of the four men who committed the robbery. Another witness, Michael Wolczanski, testified that he entered the tavern at approximately 1 :oo A.M., January 5, to purchase two bottles of soda. He also identified the defendant as one of the robbers and testified that he was ordered to get down on the floor where he was searched and $45 was taken from him. As he lay there for 10 or 15 minutes, he heard the names "John" and "Marshall" mentioned.

The issue raised in this court centers upon the testimony of Charles Roney, a detective with the Chicago Police Department. On direct examination he testified that in the course of his investigation of an armed robbery at 2700 West Chicago Avenue, he went to a garage located at 1451 North Talman Avenue. At this point defense counsel objected and orally moved to suppress "any evidence or anything * * * found there." A hearing was then held on the motion, and Roney was called by the defendant.

On direct examination by defense counsel, Roney testified that at approximately 3 :oo P.M. on January 6, 1969, he and his partner went to the garage. He had no search warrant, but he did have a warrant for the arrest of the defendant, who rented the garage. The detective testified that he looked into the garage, which was a two-car garage

at the rear of the lot, "to see if Mr. Morales was in there." He saw "several cartons of cigarettes, [and] several bottles of whiskey laying on the floor" and "walked in the garage." Roney further testified that the "owner of the building," a "Spanish woman" whose name he could not recall, had given him permission to go into the garage. Roney testified that it was not until 4:30 that afternoon that he was notified that the defendant had been arrested by other officers an hour earlier in a different part of the city.

On cross-examination Officer Roney testified that before he went to the garage he had investigated the robbery and knew what had been stolen. He further testified on redirect that after entering the garage he seized "approximately 75 bottles of whiskey, approximately 53 cartons of cigarettes, an Emerson television set, a man's brown suede jacket, a small transistor radio and approximately four keys"—all of which had been described to him by Siwak as part of the property stolen. The trial judge then reserved his ruling on the defendant's motion, and the State was permitted to resume its case in chief.

Roney was recalled by the State. He testified that the garage on Talman was only a short distance from the defendant's cleaning store, and that the seized articles were brought to police headquarters and inventoried. Siwak was allowed to view the articles, and they were returned to him. The officer also stated on cross-examination that he had first talked with Siwak some 30 hours after the robbery. At that time Siwak described the robbers to him as "four Puerto Ricans and Mexicans that ranged in the age of 25, 30 years of age; * * * they were wearing dark clothing and * * * two of them had guns." Roney also testified that at some unspecified time he had shown Wolczanski a group of photographs, including one of the defendant, and that Wolczanski made a "tentative identification" of Morales from them.

The State concluded its case in chief by recalling Siwak,

who testified that on January 6 he viewed and identified several of the stolen articles at the police station. After his identification, the police immediately surrendered to him the seized whiskey, cigarettes, transistor radio and Emerson television, but kept the four keys along with the suede jacket which Siwak had identified as belonging to one of the victims of the tavern robbery. Siwak subsequently sold the cigarettes and whiskey in the normal course of business. None of the articles seized by Roney was physically introduced into evidence at the trial.

The defendant testified. He denied committing the robbery. On cross-examination he testified that he had never been in the tavern at 2700 West Chicago Avenue, and that he had slept alone in his cleaning store at 2614 West LeMoyne from 9:00 P.M., January 4, to approximately 2:00 A.M., January 5, when he was awakened by "some friends," including John Vasquez and Marcial Feliciano. The defense then rested.

The defendant's principal contention on appeal is that the trial court erroneously overruled his oral motion to suppress not only all articles seized by Officer Roney, but also all testimony regarding these articles. He argues that "the search of his garage and the seizure therein by a police officer of merchandise subsequently identified as having been stolen in the robbery for which he was convicted"—all without a valid search warrant—violated his rights under the fourth and fourteenth amendments to the Federal constitution.

In support of this contention the defendant quotes the following statement from *Shipley* v. *California* (1969), 395 U.S. 818, 819-20, 23 L. Ed. 2d 732, 734, 89 S. Ct. 2053: "The Court has consistently held that a search 'can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest.' *Stoner* v. *California,* 376 U.S. 483, 486, 11 L. Ed. 2d 856, 859, 84 S. Ct. 889. (Emphasis supplied.)"

Based upon this quotation, the defendant argues: "The plain truth o the matter is that in order to support a search without warrant as incident to an arrest, the state must show hat the search and seizure was in fact incident to the arrest. The two significant dimensions are space and time. As a search is not incident to an arrest at some other time, it also cannot find support in an arrest at some other place. Here the evidence is clear that there was in fact no arrest at all that had anything whatever to do with Officer Roney's activities."

This argument is based upon a transposition of the literal words of the opinion of the Supreme Court in the *Shipley* case, from that case to this case, without regard to the factual differences between the two cases. The effect of that kind of verbal asportation is to give the words of an opinion a life of their own, independent of the circumstances that evoked them. Such an argument has no place in a common law court.

In the *Shipley* case, the search was made by police officers who had lain in wait for the defendant outside his residence, and, after arresting him there without a warrant, had then entered the house and searched it. It is true that in the case before us the defendant was not arrested in the garage which Officer Roney had entered in the execution of the warrant for the arrest of the defendant. But that fact is immaterial. It was the duty of the officer to attempt to arrest Morales, and, in the performance of that duty, to check the garage to see if he was there. There is nothing in the constitution of Illinois or of the United States which required the officer to disregard what he saw when he went into the garage or which prohibits him from testifying about it. See *People* v. *Barbee* (1966), 35 Ill.2d 407; *People* v. *Sprovieri* (1969), 43 Ill.2d 223.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*