THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TROY WILSON, Defendant-Appellant.

Second District   No. 79-69

Opinion filed July 24, 1980.

Mary Robinson and Marilyn Martin, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant was charged by information and convicted following a bench trial in Lake County of possession of 1.65 grams of a controlled substance. (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b).) He was sentenced to the Department of Corrections for a fixed term of three years.

The defendant raised two issues on appeal, the first of which was withdrawn by leave of this court. We therefore address only the second issue raised which is this: whether police with probable cause to arrest may proceed warrantless to private premises in the absence of exigent circumstances to effect such arrest. Pursuant to the facts disclosed and the authorities cited below, we determine they may not.

The evidence adduced at the suppression hearing and stipulated to at trial disclosed that on May 13, 1978, a North Chicago Holiday Inn security guard, LaVern Moss, received complaints from some of the guests that a young white male was loitering suspiciously in the aisleway in front of

Room 230 for about 30 or 35 minutes. The record indicated Moss had also received complaints from guests about being solicited to purchase narcotics by someone residing in Room 230. At approximately 9 p.m., Moss himself observed the man in the aisleway and instructed him to wait in the lobby. At that time, Moss observed through partially opened drapes that the large lamp that was supposed to be bolted to the table by the window inside the room was missing. Moss checked with the desk and housekeeping and the maintenance man, and it was confirmed that there was a lamp in the room at the time it was rented. He called the police to report the possible theft of the lamp, and two North Chicago police officers accompanied Moss to the room, where no answer was received in response to their knocks. Upon leaving, the police instructed Moss to call them again when the occupants returned to the room.

On his way to another room about half an hour later, Moss observed the same young white male seated in the aisleway outside Room 230. He took him back down to the lobby and into the office where he was advised that if he wished to wait for the people, he would have to do so in the lobby.

Moss then entered Room 230 in the company of the night maintenance man, utilizing a pass key. The lamp was nowhere in the room, but they saw what appeared to be a butcher knife on the floor by the heater, bloody cotton wads and rags in the waste can and toilet, a bloody washcloth on the sink, a hypodermic syringe and a small bottle of clear fluid. Moss called the police again about 11 or 11:30 p.m. when he observed the two black men, Gregory Agnew and Troy Wilson, who were the room occupants, return to the Inn in a car. When Agnew and Wilson entered the room, they were accompanied by a white man and woman.

North Chicago police officers Pedrin and Kussman responded, and two other officers arrived sometime later. The record was unclear as to whether Pedrin and Kussman were the same two officers who had responded to the first call. Moss said they were the same two officers; Pedrin said he only spoke with Moss by telephone earlier that evening regarding a disturbance; Kussman said Pedrin was at the Holiday Inn earlier and had spoken with Moss, but that he himself was not one of the officers who responded to the first call. The record indicates that on the way to the room, Moss told the officers he entered the room earlier, did not find the lamp, and that he would sign a complaint against the two room occupants for theft. He also told the officers about the knife, bloody cotton wads and rags, and the syringe he had observed in the room.

When they arrived at the door of the room, Officer Pedrin stood to the right of the door which opened inward from the left to the right; Officer Kussman was slightly to the right of and behind Pedrin. Moss was

in front of the door and to the left of the officers. Officer Pedrin testified they could hear voices inside the room. Moss and Kussman testified that Moss knocked on the door, identified himself as security, and asked to speak with them about the missing lamp. The officers said nothing at this point, nor did Moss indicate their presence. One of the black men, Gregory Agnew, opened the door to the length of the chain guard, apparently saw only Moss, closed the door in order to remove the chain, and began to open it. Pedrin testified, however, that when Moss knocked, there was no response and that Moss used his passkey to unlock and open the door to the point where it was stopped by the chain guard. Pedrin testified Moss then had a conversation with someone inside the room to the effect that he was there to check on a lamp inside the room and also that there were more than the two people who had rented the room in there and the other two would have to leave. The door was then closed, the chain guard was removed, and the door was beginning to be opened.

The record indicates that at that point, Officer Pedrin stepped in front of the door alongside Moss, and was observed by Agnew who shouted, "It's the police!" and tried to close the door. Officer Pedrin observed defendant Troy Wilson, who was seated on the bed nearest the door, get up and move across the bed in the direction of the back of the room where the bathroom was located. Pedrin did not recall seeing anything in the defendant's hand. Pedrin thereupon pushed the door open and pursued defendant Wilson into the bathroom where a plastic bag containing five silverfoil packets was retrieved from the toilet. Both Agnew and Wilson were arrested shortly thereafter. The lamp was later recovered from the car in which Agnew and Wilson had returned to the Inn.

The State argues that when the officers arrived after the second call from Moss, were informed that the lamp was indeed missing and that he would sign a complaint against the room occupants, they had probable cause to arrest the occupants for theft. The State contends that the Criminal Code and the constitution allow warrantless arrests based on probable cause, citing section 107—2(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c)), *United States v. Watson* (1976), 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820, and *People v. Johnson* (1970), 45 Ill. 2d 283. The State further argues, citing *People v. Dennison* (1978), 61 Ill. App. 3d 473, and *People v. Lower* (1977), 55 Ill. App. 3d 1014, that this probable cause to arrest for theft gave the police the right to investigate further and that they had a right to be positioned in the aisleway outside the room. From this vantage point, and coupled with the information from Moss about the other items he had observed in the room, the defendant's movement across the bed gave the police probable cause to believe that a drug-related crime was being

committed and that destruction of the evidence was imminent. The State concludes the warrantless search and seizure was justified by this exigent circumstance.

■■ We cannot accept the State's argument, however, because we do not agree that under the particular facts of this case the probable cause to arrest for the theft of the lamp gave the officers the right to proceed warrantless to investigate further and to be positioned in the aisleway outside the defendant's room. We agree with the defendant's position, which the State does not dispute, that the officers had more than sufficient information upon which to obtain a warrant with regard to the theft of the lamp, and on this basis distinguish the two cases cited by the State in support of the right of the police to investigate further, *People v. Dennison* (1978), 61 Ill. App. 3d 473, and *People v. Lower* (1977), 55 Ill. App. 3d 1014. The defendant further posits that the purpose of proceeding to the room to further investigate was merely a pretext used to induce the exigent circumstance which did, in fact, occur with regard to the drug-related activities and we agree.

There was nothing in the record to explain why a warrant for arrest for theft was not sought, nor why these officers, purportedly engaged in a legitimate investigative action, remained out of viewing range until such time as the occupants began to open the door to admit the security guard. We are led to the conclusion that the officers reasonably anticipated that their sudden appearance at the door would cause the occupants to react in a manner consistent with what actually did occur and that this would then enable them to catch the offenders "in the act" due to the exigency of the situation.

In reviewing the sequence of events in the record of this case, we determine that before proceeding to the defendant's room, the officers had sufficient probable cause to obtain an arrest warrant for theft and that no exigent circumstances existed which justified the defendant's warrantless arrest except those improperly created by the officers themselves. Our determination is based on the premise that more than mere probable cause must be present to justify a warrantless entry of a private residence to arrest, which premise is supported by the authority of the Illinois Supreme Court's opinion on this issue in *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543.

At the outset, we consider, and the State does not appear to argue to the contrary, that the occupant of a motel room is likewise entitled to fourth amendment protection against unreasonable governmental searches and seizures. (*People v. Bankhead* (1963), 27 Ill. 2d 18.) Since *United States v. Watson* dealt with a warrantless arrest in a public place and the court specifically reserved the question " 'whether and under what circumstances an officer may enter a suspect's home to make a

warrantless arrest', " the State's citation to that authority is inapplicable here. (*United States v. Watson* (1976), 423 U.S. 411, 418 n.6, 46 L. Ed. 2d 598, 605 n.6, 96 S. Ct. 820, 825 n.6.) Further, during the pendency of this appeal, the United States Supreme Court answered the question reserved in *Watson* in *Payton v. New York* (1980), ___ U.S. ___, 63 L. Ed. 2d 639, 100 S. Ct. 1371. The court there held that the warrantless, nonexigent entry of a private residence for the purpose of effectuating a felony arrest is unconstitutional. With the benefit of the *Payton* decision, the Illinois Supreme Court in *Abney* determined that Illinois' arrest statute (Ill. Rev. Stat. 1977, ch. 38, pars. 107—1 through 107—14), as construed and by virtue of constitutional restrictions, is in compliance with the holding in *Payton.* The court stated:

> "Although the opinions of this court which have upheld warrantless entries seem merely to echo the words of the statute, a close examination of the cases reveals that factors in addition to probable cause were present in each which rendered the police activity reasonable under the circumstances within the meaning of constitutional provisions governing the arrest of persons (U.S. Const., amend. IV; Ill. Const. 1970, art. I, sec. 6; see *People v. Morales* (1971), 48 Ill. 2d 396 (police sighted stolen goods in a garage and obtained consent from the owner of the building before entering); *People v. Johnson* (1970), 45 Ill. 2d 283 (defendant was seen in his home by the police before their entry); *People v. Sprovieri* (1969), 43 Ill. 2d 223 (police learned before their entry of defendant's intention to flee the city); *People v. Barbee* (1966), 35 Ill. 2d 407 (police were in close pursuit of an armed suspect when entering)). Although this court in *Johnson, Sprovieri* and *Barbee* did not use the phrase 'exigent circumstances' and even expressed some doubts about the exigent-circumstances requirement (see, *e.g., People v. Johnson* (1970), 45 Ill. 2d 283, 287-88), it appears that the principles of the exigent-circumstances rule were adopted in those cases and that the requirements of the rule, by virtue of constitutional restrictions, have been judicially engrafted upon the statute. The statute, as construed, is thus in compliance with the constitutional guidelines enunciated in *Payton.*
>
> Because exigent circumstances must be present to justify a warrantless entry to arrest, we turn to the issue of whether such circumstances are present in the case now before us." 81 Ill. 2d 159, 167-68.

So, also, do we turn to an examination of whether such circumstances are present in this case. In *Payton,* the United States Supreme Court stated that "[t]he simple language of the [Fourth] Amendment applies

equally to seizures of persons and to seizures of property" (*Payton v. New York* (1980), ___ U.S. ___, ___, 63 L. Ed. 2d 639, 650, 100 S. Ct. 1371, 1379), and looked to the well established rules which have resulted from fourth amendment litigation involving tangible items. Following that lead, we are cognizant of the "exigent circumstances" factors set forth, notably, in *Dorman v. United States* (D.C. Cir. 1970), 435 F.2d 385, and followed, *inter alia*, in *People v. Wolgemuth* (1976), 43 Ill. App. 3d 335, *rev'd on other grounds* (1977), 69 Ill. 2d 154, and *People v. Trull* (1978), 64 Ill. App. 3d 385.

The factors which these cases have considered in determining whether exigent circumstances are present so as to justify a warrantless entry are:

(1) The gravity of the offense involved, especially if violent in nature;

(2) The reasonable belief that the suspect is armed;

(3) The clear showing of probable cause including reasonably trustworthy information to believe the suspect committed the crime involved;

(4) The strong belief that the suspect is in the premises being entered;

(5) the likelihood the suspect will escape if not swiftly apprehended;

(6) The forcible or peaceful nature of the entry and

(7) The time of the entry, *i.e.*, during the day or at night.

The court in *Payton* did not define what it considered to be exigent circumstances since no such justification for the warrantless action was claimed. The court in *Abney*, however, and without limiting the definition thereto, set forth three factors it considered were indicative of exigent circumstances and four factors which it considered were indicative of the reasonableness of the police action in that case. The exigency factors were:

(1) The recentness of the offense and the need for prompt action (*i.e.*, within the spirit of the "hot pursuit doctrine");

(2) The fact there was no deliberate or unjustified delay by the officers during which time a warrant could have been obtained and

(3) The fact the suspect was armed and exhibited some sign of a violent character.

The reasonableness factors were:

(1) The existence of a clear showing of probable cause based on reasonably trustworthy information;

(2) The clear identification of the suspect;

(3) The belief that the suspect was in the premises entered and

(4) The fact the entry made was peaceful.

Taking into account these various factors, we determine that at the time the officers had sufficient probable cause to obtain a warrant for arrest for theft of the lamp, no exigent circumstances existed which would have justified their warrantless arrest of the suspect. Further, their covert approach and forcible entry into the room during the late hours of the night was unreasonable, and illustrative of the overzealousness the warrant requirement was formulated to overcome. There is little doubt their approach anticipated and was designed to create the exigent circumstances the State claims as justification for the warrantless arrest. (See *United States v. Houle* (8th Cir. 1979), 603 F.2d 1297; *United States v. Curran* (9th Cir. 1974), 498 F.2d 30.) To approve the consequences of such an arrest would render fourth amendment protections vulnerable to possibly even more imaginative government-created exigencies and quickly render the warrant requirement a nullity. The crime involved here was not a violent one, nor was there any indication the suspects had violent characters. There was a knife in the room, but the suspects were unaware the police had knowledge of the theft or the drug paraphernalia and likely would not have been on the defensive, particularly if they had been given an opportunity to respond knowingly to the police presence at the door. There was positive information from the security guard that there had been a lamp in the room when it was rented and that he was unable to find the lamp anywhere in the room. The voices inside the room reasonably indicated the people the security guard had seen enter shortly before were still present. However, there was no indication the delay occasioned by the securing of a warrant would have impeded apprehension of the suspects, or that they were about to flee the premises since the room was rented for at least that night. Therefore, we conclude there was ample time and sufficient probable cause to obtain a warrant.

■■ Because we have determined that the defendant's warrantless arrest was violative of his fourth amendment rights, the fruits of that arrest (*i.e.*, 1.65 grams of a controlled substance containing heroin) should have been suppressed. Since the defendant could not have been convicted without this evidence, we determine that his conviction must be reversed outright.

The judgment of the circuit court of Lake County is reversed.

*Judgment reversed.*

SEIDENFELD, P. J., and NASH, J., concur.