THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
ALEXANDER KLIMEK, Defendant-Appellee.

Second District    No. 80-652

Opinion filed October 15, 1981.

2

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, of counsel), for the People.

Mary Robinson and Marilyn Martin, both of State Appellate Defender's Office, of Elgin, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

Defendant, Alexander Klimek, was arrested by the Village of Woodridge police on March 6, 1980, and was subsequently charged by information with violation of the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 704(c)); disorderly conduct (Ill. Rev. Stat. 1979, ch. 38, par. 26—1(a)(1)); two counts of aggravated battery (knowing the individual harmed to be a police officer while such officer was in the execution of his official duties) (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(6)); and three counts of resisting arrest (Ill. Rev. Stat. 1979, ch. 38, par. 31—1). The defendant filed a motion to quash his arrest and

suppress evidence. Specifically, his motion requested the suppression of all physical evidence seized, suppression of all statements, admissions, confessions, whether inculpatory or exculpatory, written or oral, and all testimony pertaining to events which occurred inside the defendant's home at the time of his arrest. The trial court granted the defendant's motion in its entirety, quashing the arrest and suppressing all evidence requested in the motion. The State has taken interlocutory appeal of that order, pursuant to Illinois Supreme Court Rule 604(a)(1). Ill. Rev. Stat. 1979, ch. 110A, par. 604(a)(1).

Officer Chris Marema of the Village of Woodridge Police Department testified at the suppression hearing that he arrived at the apartment building where defendant resided at approximately 10 a.m. on March 6, 1980. Upon arrival, Officer Krupka informed him that defendant's upstairs neighbor had complained about defendant's foul language and a complaint was going to be signed for disorderly conduct. The complaint, however, was not signed until after the defendant had been taken into custody and transported to the Village of Woodridge police station. Marema further testified that Officers Krupka, Andrewski, and himself, all in police uniform, proceeded to defendant's apartment and knocked on the door. When a female voice inquired from behind the closed door what they wanted, the officers informed her that they were police officers, informed her of the complaint, and requested to speak with Alexander Klimek. The female then opened the door and entered the hallway. She informed the officers that Klimek was ill and could not come to the door. At that point, a male voice from inside the apartment yelled, "Get in here. Those m_____ f_____ ain't coming in." The female then attempted to run from the hallway and re-enter the apartment, and the door was slammed on Officer Krupka's "leg and foot area." The officers then pushed on the door inward, swung it open and went into the apartment. Defendant was found behind the door up against the wall, and he began swinging, striking Marema and pushing the other officers. After subduing the defendant, Officer Marema observed a clear plastic "baggie" containing a green, leafy substance, alleged to be cannabis, lying near the couch which was three or four feet from the door. The item was then seized and defendant was arrested and taken to the police station.

Officer Krupka testified he had been assigned to a call to speak to a complainant regarding a complaint of disorderly conduct. He then spoke with this person who said she wished to sign a complaint. She told him that they had problems with noise with the people who lived downstairs and that there had been pounding on the floor of their apartment and the shouting of obscenities directed toward her family. Officer Krupka then testified that the other two officers joined him and they went down to defendant's apartment. After knocking on defendant's door, Krupka

heard a female voice ask what was going on. He told her they wished to speak with Mr. Klimek and would like to know if he was home. The female said he was unavailable and sick and couldn't come to the door. Krupka testified that he indicated there was a complaint from upstairs, and then the female came out. He told her then that the people upstairs wished to sign a complaint and Mr. Klimek would be arrested. She told him they had no right to knock at the door and the police weren't going to come in. As she began to re-enter the apartment, the door opened and he heard a voice shout that they wouldn't get in. Krupka stated he attempted to then look in the door a little better, and the door slammed on his foot which was just inside the threshold of the door. The officers then attempted to enter the apartment. Krupka testified he did this "for my safety as to who was behind the door * * * and that a battery had been committed." He saw defendant then hit Officer Marema. After the defendant was arrested and taken to the police station, he advised defendant of his *Miranda* rights. No other witnesses testified at the hearing.

At the time of their forced entry into the defendant's apartment, the police officers had neither an arrest nor a search warrant. The testimony also established that the officers had not personally observed defendant's actions with regard to the initial disorderly conduct charge. Also, consent to enter the apartment was refused by both of the apartment's occupants.

On appeal, the State's argument to justify the warrantless entry is that sufficient exigent circumstances existed which entitled the arresting officers to enter defendant's apartment to make a warrantless arrest. Secondarily, the State contends that even if exigent circumstances are not found the trial court's suppression order is too broad.

Absent exigent circumstances, the fourth amendment prohibits the police from making a nonconsensual entry into a suspect's home for the purpose of effecting an arrest without a warrant. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.) The officers' entry in the present case was not pursuant to warrant and was clearly nonconsensual. Therefore, in order to justify the officers' entry into defendant's home, there must be a showing of exigency.

■■ The question of whether exigent circumstances exist is a question of law, subject to *de novo* review by this court. (*People v. Abney* (1980), 81 Ill. 2d 159, 168, 407 N.E.2d 543, 549.) Our supreme court in *People v. Abney* (1980), 81 Ill. 2d 159, 168, 407 N.E.2d 543, 547, defined three factors indicative of the presence of exigent circumstances authorizing a warrantless entry of a dwelling, and set forth four factors which suggested to the court that the officers acted in a reasonable manner. This court summarized those factors in *People v. Wilson* (1980), 86 Ill. App. 3d 637, 408 N.E.2d 988, as follows:

"(1) The recentness of the offense and the need for prompt action (*i.e.*, within the spirit of the 'hot pursuit doctrine');

(2) The fact there was no deliberate or unjustified delay by the officers during which time a warrant could have been obtained and

(3) The fact the suspect was armed and exhibited some sign of a violent character."

The reasonableness factors were:

"(1) The existence of a clear showing of probable cause based on reasonably trustworthy information;

(2) The clear identification of the suspect;

(3) The belief that the suspect was in the premises entered and

(4) The fact the entry made was peaceful." (86 Ill. App. 3d 637, 642, 408 N.E.2d 988, 992.)

The State contends that each of the *Abney* factors giving rise to exigent circumstances are present under these facts. We disagree.

■■ "The recentness of the offense and the need for prompt action" cannot justify the officers' entry in the present case. First, it should be noted that Officer Krupka's placement of his foot inside the threshold of defendant's door constitutes an entry. There is no suggestion in the record that the acts of defendant prior to this time (*i.e.*, his alleged disorderly conduct) necessitated prompt action by the officers. Although it appears from the record that the defendant's alleged disorderly conduct occurred sometime that morning before the officers' arrival, the mere "recentness of the offense," by itself, without a need for prompt action, cannot give rise to exigent circumstances under these facts. It cannot be said under these circumstances that "[d]elay to obtain a warrant would have impeded a promising police investigation and conceivably provided the added time needed * * * to avoid capture altogether." *United States v. Robinson* (D.C. Cir. 1976), 533 F.2d 578, 583 (*en banc*), *cert. denied* (1976), 424 U.S. 956, 47 L. Ed. 2d 362, 96 S. Ct. 1432, as quoted by the court in *People v. Abney* (1980), 81 Ill. 2d 159, 170, 407 N.E.2d 543, 550.

■■ The State further contends that promptness of action was necessitated by the officers in order to prevent injury to Officer Krupka. However, the defendant's act of slamming the door on Officer Krupka's foot came only after Krupka's original unlawful entry. Such is a classic example of police-created exigency which cannot be the basis for a warrantless entry. See *People v. Wilson* (1980), 86 Ill. App. 3d 637, 643, 408 N.E.2d 988, 993.

■■ Similarly, the second and third factors listed in *Abney* as suggestive of exigency do not aid the State. Although there was no "deliberate or unjustified delay by the officers during which time a warrant could have

been obtained," the mere fact that the officers did not hesitate between the time of the complaint and their forcible entry does not render void the necessity of obtaining a warrant. As previously noted, a delay in obtaining a warrant would not have jeopardized the apprehension of the defendant or hindered any police investigation. Also, the third *Abney* factor does not indicate exigency under these circumstances. There was no reason to believe defendant was armed and he was not accused of committing a violent crime or one involving a weapon. In fact, the offense he was accused of was a non-violent misdemeanor and which even the dissent in *Payton* recognized in stating the common law rule that invasions of the home should occur only in case of the most serious crimes. (*Payton v. New York* (1980), 445 U.S. 573, 616, 63 L. Ed. 2d 639, 669, 100 S. Ct. 1371, 1395 (White, J., dissenting).) Although defendant's conduct could be described as hostile, he had not perpetrated a "violent" act prior to the officers' arrival that could lead to their "time-consuming speculation as to whether more violence will occur while a warrant is sought." (81 Ill. 2d 159, 171, 407 N.E.2d 543, 551:) These circumstances clearly did not justify a warrantless entry. See *People v. Sanders* (1978), 59 Ill. App. 3d 6, 9-10, 374 N.E.2d 1315, 1317-18.

■■ Since we have determined that the entry into defendant's apartment was violative of his fourth amendment rights, the fruits obtained by exploitation of that illegality must be suppressed. (*People v. Wilson* (1980), 86 Ill. App. 3d 637, 643, 408 N.E.2d 988, 991.) Accordingly, we hold that the trial court correctly suppressed the physical evidence, the cannabis, seized inside the defendant's apartment. Also, the admission of this evidence cannot be justified on a "plain view" theory since the officers' entry was unlawful. The validity of sighting evidence in plain view following a police entry into a home is dependent upon the validity of the entry. *People v. Abney* (1980), 81 Ill. 2d 159, 163, 407 N.E.2d 543, 545.

■■ Defendant's motion also requested suppression of "all statements, admissions, confessions whether inculpatory or exculpatory whether written or oral" and "all testimony as to events which occurred inside the defendant's home." With regard to the court's suppression of testimony concerning statements or events which occurred prior to the arrival of the police and the events surrounding the charge against defendant of disorderly conduct, we hold that this was error. The facts giving rise to the original disorderly conduct complaint are entirely independent from the illegal entry in this case and are not tainted thereby.

Also, concerning defendant's "statements, admissions" and "confessions," the record lacks sufficient evidence to determine whether their suppression was error. The record does not reveal where or when these statements were made nor to what offense they were directed, if in fact

any statements were made. Accordingly, we remand for a determination of these issues.

■■ Finally, with regard to the suppression of testimony concerning the events which occurred inside of defendant's apartment and which form the basis of the aggravated battery and resisting arrest counts, we find this portion of the suppression order to be erroneous. In *People v. Abrams* (1971), 48 Ill. 2d 446, 271 N.E.2d 37, our supreme court refused to extend the exclusionary rule to suppress evidence of a defendant's own unlawful conduct which was in response to police actions which were in violation of the fourth amendment. The court reasoned that to allow a defendant to suppress evidence of his unlawful conduct done in reaction to an illegal search would be to encourage unlawful and retaliatory conduct. (48 Ill. 2d 446, 456, 271 N.E.2d 37, 44.) The Illinois Criminal Code specifically provides that "[a] person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." (Ill. Rev. Stat. 1979, ch. 38, par. 7—7.) Our supreme court in construing section 7—7 has held that resistance of even an unlawful arrest by a known officer is a violation of section 31—1 (Ill. Rev. Stat. 1979, ch. 38, par. 31—1). (*People v. Locken* (1974), 59 Ill. 2d 459, 465, 322 N.E.2d 51, 54; see also *People v. Rounds* (1977), 46 Ill. App. 3d 298, 360 N.E.2d 1210.) Therefore, if the officers were attempting to effectuate an arrest, regardless of its legality, the defendant could not lawfully resist. Thus, evidence of defendant's actions would not be subject to suppression under the exclusionary rule. (*People v. Abrams* (1971), 48 Ill. 2d 446, 456, 271 N.E.2d 37, 44.) While issues of fact may arise as to whether the police were attempting to effectuate an arrest or whether the defendant knew them to be peace officers, those matters are properly resolved by the trier of fact at trial. See *People v. Wareberg* (1976), 44 Ill. App. 3d 78, 82, 358 N.E.2d 54, 57.

Accordingly, the order suppressing the physical evidence seized inside the defendant's apartment is affirmed. The portion of the order granting suppression of all other evidence requested in defendant's motion is reversed, and the cause is remanded for proceedings consistent with the views expressed herein.

Affirmed in part, reversed in part and remanded.

NASH and LINDBERG, JJ., concur.