THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD BANKS, Defendant-Appellant.

First District (4th Division)   No. 1—87—0041

Opinion filed September 29, 1989.

Michael J. Pelletier and Martin Carlson, both of State Appellate Defender's Office, and Chadwell & Kayser, Ltd., both of Chicago (Craig T. Maxwell, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Carol Gaines, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, defendant Ronald Banks was convicted of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)) and sentenced to a term of natural life imprisonment. On appeal, defendant argues that he should receive a new trial because (1) the trial court should have allowed his motion to quash his warrantless arrest and to suppress evidence seized during and following that arrest; and (2) he was denied effective representation of counsel at trial. We affirm.

Defendant was tried by a jury for the armed robbery of a currency exchange that occurred at approximately 6 p.m. on October 1, 1985. Dorothy Harrison (Harrison), an employee at the currency exchange, testified that at that time she had closed the business for the day and was preparing to leave the building. As she exited the build-

ing, a man grabbed her from behind, put a hand over her mouth, and held a large butcher knife up to her face. Harrison testified that the man forced her back into the currency exchange and told her that he had a stick of dynamite. The assailant ordered her to open the safe and put money into a plastic bag that he handed to her. Harrison complied, placing money, food stamps, city stickers, and six money orders for $250 each, which he directed her to make, into the bag. The man then demanded her car keys, which she gave to him, and also took her wallet. The offender then directed Harrison to stay in a certain area of the currency exchange and fled in her car.

Harrison summoned the police, who arrived shortly thereafter. She told them that the assailant was a black male with a medium complexion, 30 to 35 years old, 6 feet tall, 180 pounds, and that he had black nappy hair and a mustache. Harrison also told police that the offender was wearing a blue jean jacket and dark pants. She said that the man had taken over $5,000 in cash, $8,000 in food stamps, the money orders, and a number of city stickers, CTA tokens and coins, as well as Harrison's car, wallet, and keys. At trial, Harrison identified defendant as the offender.

At approximately 10:30 p.m. the day after the incident, the police received an anonymous tip that a man was selling food stamps from a room in a hotel located approximately three miles from the currency exchange that had been robbed the previous evening. The caller's description of the man matched that which Harrison had given, except that the anonymous caller's description did not include a mustache. As relayed to investigating officers, the caller said that he believed the man was the person who had robbed the currency exchange the day before, that the man "was currently at the hotel, but he was leaving his room right now, and he would be leaving the hotel shortly." Based on this information, Chicago police officers proceeded to the hotel and set up surveillance of the front and rear of the hotel. After a short period of time, the police officers waiting in front of the hotel saw a man who fit Harrison's description go into a hotel room. After verifying with the hotel manager that the man was renting this room, the officers went to the door of the hotel room and knocked on the door, announcing that they were police officers. The man answered that he would come to the door in a minute. The officers waited a few minutes, knocked again, and the man opened the door. The officers could see into the room through the open doorway, and observed several large stacks of food stamps on a nightstand in the room. The man attempted to close the door, but the officers held the door open and the man ran into a bathroom in the hotel room. The officers then

entered the room and placed the man under arrest. The person so arrested was defendant. The officers recovered the food stamps that were in plain view in the room. They also seized a blue nylon bag that was open on a bed in the hotel room, searched the bag, and found additional evidence therein, including Harrison's wallet. Later they recovered Harrison's car keys from defendant, as well as Harrison's car, which was parked in a location to which defendant had directed the officers.

Defendant was then taken to a police station for processing. During post-arrest interrogation conducted by officers following defendant's waiver of his *Miranda* rights, defendant admitted to the robbery of the currency exchange. In this statement, defendant told the officers that after he had taken all the proceeds from the safe, and taken Harrison's keys and wallet from her possession, defendant "showed" Harrison a knife. Defendant's statement made no reference to threatening to use dynamite at any time during the robbery. While at the police station, defendant was placed in a lineup, where he was positively identified by Harrison.

A fingerprint recovered from the inside surface of a door that led to the employee work area of the currency exchange was found to match defendant's fingerprints. No knife was ever recovered from the currency exchange, from defendant's hotel room, or from Harrison's car.

Defendant's defense at trial was that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt of armed robbery, on the premise that the State's evidence did not establish that he had used a knife during the course of the robbery. In his defense, defendant called a Chicago police officer who spoke to Harrison shortly after the incident. The officer testified that according to the narrative portion of the officer's report, Harrison did not mention to the officer that her assailant had used a knife. In rebuttal, the State called another police officer who had also talked with Harrison shortly after the incident; this officer testified that Harrison did state that the offender had used a knife to gain entry to the currency exchange and force her to turn over the items taken during the course of the incident.

Based upon this evidence, the jury found the defendant guilty of armed robbery. The trial court sentenced the defendant to a term of natural life imprisonment, and he now appeals.

OPINION

█ Defendant argues first that the trial court should have al-

lowed his motion to quash arrest and suppress evidence seized during that arrest. Defendant asserts that there were no exigent circumstances to justify the police officers' failure to obtain a warrant for his arrest. We disagree. In *People v. White* (1987), 117 Ill. 2d 194, 512 N.E.2d 677, the Illinois Supreme Court set forth the following guidelines with respect to exigent circumstances that obviate the necessity of an arrest warrant:

> "[Exigent] circumstances must 'militate[ ] against delay and justif[y] the officers' decision to proceed without a warrant.' [Citation.] In addition, the police officers must act in a 'reasonable fashion.' [Citation.] The guiding principle is reasonableness, and each case must be decided on the basis of the facts presented [citation] and known to the officers at the time they acted. [Citation.] While no list of factors bearing on exigency can be considered exhaustive, we have in the past taken into account: (1) whether the offense under investigation has been recently committed [citation]; (2) whether there was any deliberate or unjustified delay by the officers during which time a warrant could have been obtained [citation]; (3) whether a grave offense is involved, particularly a crime of violence [citation]; (4) whether the suspect is reasonably believed to be armed [citations]; (5) whether the police officers were acting upon a clear showing of probable cause [citations]; (6) whether there is a likelihood that the suspect will escape if not swiftly apprehended [citation]; (7) whether there is strong reason to believe that the suspect is in the premises [citation]; and (8) whether the police entry, though nonconsensual, is made peaceably [citation]. All of these factors are guidelines, not cardinal maxims to be applied rigidly in each case. [Citation.]" 117 Ill. 2d at 216-17.

■ Applying these factors to the case at bar, we find no abuse of discretion in the trial court's determination that exigent circumstances excused the officers' failure to obtain an arrest warrant prior to their apprehension of the defendant in his hotel room. The record shows that the armed robbery of the currency exchange had been committed only a day earlier and that the offender had used a butcher knife to perpetrate the crime. The officers proceeded to the hotel immediately upon their receipt of the anonymous tip, saw the defendant enter the hotel shortly thereafter, and ascertained upon their sighting of him that he fit the description given by the victim and the tipster. The officers then went to the hotel room, knocked on the door and announced their office, and waited for defendant to open the door.

When the defendant did so, the officers saw a large quantity of food stamps in the room. They then entered the room before the door was shut as the defendant began to run from the doorway. The tipster had informed the police that the defendant "would be leaving the hotel shortly," and the defendant's flight from the doorway and the officers served only to confirm the possibility of defendant's attempt to flee. Given these circumstances, we find no abuse of discretion in the trial court's determination that the officers were faced with exigent circumstances that justified their decision to arrest the defendant immediately, rather than await the issuance of a formal arrest warrant.

■ Defendant argues that the trial court erred in its denial of defendant's motion to quash, because the trial court based this denial solely upon a finding that the police had probable cause to arrest the defendant. The record shows that the trial court did not base its ruling exclusively or predominantly upon a finding of probable cause, however. Rather, the record shows that the defendant argued that his motion to quash should be allowed because there was no probable cause to arrest him, and that even if there was probable cause, there were no exigent circumstances to justify the absence of an arrest warrant. In its oral pronouncements denying the defendant's motion to quash, the trial court determined that there was probable cause to arrest the defendant, and that there were also exigent circumstances to justify the officers' failure to obtain an arrest warrant. In finding exigent circumstances, the trial court made a thorough review of the evidence and the applicable legal principles with respect to the question. Defendant's argument that the trial court based its denial of defendant's motion to quash on an improper reliance upon probable cause finds no support in the record before us.

■ Defendant further contends that because the police made a "conscious, deliberate decision" to arrest the defendant when they received the anonymous tip and proceeded to the hotel, there could be no exigent circumstances justifying their failure to first obtain a warrant for the defendant's arrest, citing 2 W. LaFave, Search & Seizure section 5.1(a), at 391 (1987), *People v. Wilson* (1980), 86 Ill. App. 3d 637, 408 N.E.2d 988, *United States v. Morgan* (6th Cir. 1984), 743 F.2d 1158, *People v. Hogan* (Colo. 1982), 649 P.2d 326, and *United States v. Morse* (1984), 125 N.H. 403, 480 A.2d 183. We are not persuaded by defendant's claim, however, since in none of the cases cited were the police acting under the reasonable belief that the defendant would soon flee the premises where he could be located. Under the facts of this case, we conclude that the officers were faced with exigent circumstances that justified their decision to arrest the defend-

ant without a warrant.

■ Defendant also maintains that the police acted unlawfully when they seized and searched defendant's nylon bag, found on a bed in the hotel room, without first obtaining a search warrant. Defendant never argued this point to the trial court, however, and the issue is waived upon review. (See *People v. Turner* (1989), 128 Ill. 2d 540, 555, 539 N.E.2d 1196.) In view of the overwhelming evidence of the defendant's guilt, we would not consider this alleged deficiency to amount to plain error.

Defendant's second point of asserted error pertains to the competency of the legal representation he received at trial. Specifically, defendant challenges his attorney's decision to concede that defendant committed a robbery and to argue that defendant did not commit an armed robbery. Defendant's trial attorney adopted the position throughout the course of the trial that the State's evidence would fail to prove beyond a reasonable doubt that the defendant used a weapon to commit the robbery. Defendant contends that this representation was so deficient that it amounted to the absence of any meaningful legal representation. On this basis, defendant asserts that he is entitled to a new trial.

To support this argument, defendant relies upon *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513. In *Hattery*, the court determined that defendant was denied effective assistance of counsel because his trial attorney told the jury during opening statement that the defendant committed the murder for which he was charged and that "the only question facing you, will be whether to impose the death penalty." (109 Ill. 2d at 458-59.) Defendant's counsel also presented no evidence on defendant's behalf, engaged in no cross-examination of State witnesses to cast doubt on the defendant's guilt, and made no closing argument to the jury. Relying on *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039, the court held that the defense attorney's representation of the defendant provided no meaningful adversarial testing to the State's case, and therefore, denied defendant effective assistance of counsel under *Cronic*.

Recently, in *People v. Chandler* (1989), 129 Ill. 2d 233, the Illinois Supreme Court distinguished *Hattery*. In *Chandler*, the defendant was accused of murder, arson and residential burglary upon a theory of accountability. The defendant had admitted his involvement in the incident to police during post-arrest interrogation, and defense counsel's statements to the jury attempted to reconcile the State's evidence with these admissions. In so doing, defense counsel conceded

that defendant had participated in the incident, but argued that defendant was not guilty of murder because he had not inflicted the wounds that caused the victim's death. The Illinois Supreme Court concluded that defense counsel's legal representation did not fall within the *Hattery* standard, reasoning as follows:

> "Counsel admitted only what defendant had already confessed to, and the jury heard a police officer testify to defendant's statements. Counsel vigorously argued that the jury should believe everything that defendant told the police, including defendant's denial of killing the victim, and did not concede any fact to which defendant did not admit in his statements to the police. We have held that similar admissions by counsel do not fall under the *Hattery* rule. See *People v. Emerson* (1987), 122 Ill. 2d 411, 428-31." *Chandler*, 129 Ill. 2d at 245-46.

●6 In our view, the legal representation provided to defendant in the case at bar was substantially similar to that found adequate in the Illinois Supreme Court's decision in *Chandler* and is in accord with *Hattery*. Defendant's trial counsel in the instant cause agreed only to those matters to which defendant had already confessed, and the jury heard the police testimony regarding defendant's statement. Defendant's trial counsel also advocated to the jury that it should believe everything that defendant told the police, including defendant's denial that he used a weapon to commit the robbery, and counsel did not concede any fact to which defendant did not admit in his statement to the police. Furthermore, defense counsel cross-examined State witnesses to develop this defense strategy and presented the testimony of a police officer whose narrative portion of her police report indicated that Harrison had said nothing about her assailant's use of a knife to commit the robbery. In view of the substantial similarities between the instant cause and *Chandler*, we conclude that defendant was not denied effective assistance of counsel within the holding of *Hattery*.

We also note that defendant consented at trial to the strategy of which he now complains upon review. The record shows that following opening statement, but before the taking of any testimony, the trial court judge said to the defendant, "Mr. Banks, as you know, in his opening remark [your attorney] has, in effect, conceded that you were there and participated in an armed robbery [*sic*] but your defense is that it wasn't an armed robbery. Is that the type of defense that you want in this case? Is that what you understand is the strategy your counsel are employing?" The defendant answered, "Yes." In *Hattery*, the Illinois Supreme Court recognized that if a defendant

knowingly and intelligently consents to his counsel's trial strategy conceding a portion of the State's case, the defense attorney's representation will not be found inadequate. (*Hattery*, 109 Ill. 2d at 464-65.) The record in the instant cause demonstrates that defendant consented to the trial strategy adopted by his defense counsel. We find no merit to defendant's appellate argument that this consent could not have been knowing and voluntary on the theory that the trial judge asked defendant a compound question and inadvertently misstated[ that defense counsel's trial strategy was to "concede[ ] that [defendant] w[as] there and participated in an armed robbery," rather than to concede that defendant participated in a robbery but not an armed robbery.

■ Although not argued by defendant upon review, we also consider whether defendant's trial attorney's representation amounted to ineffective assistance of counsel under *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. "*Strickland* requires a defendant to prove (1) that his counsel's performance was deficient by having made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the sixth amendment, and (2) that his counsel's deficiencies prejudiced the defendant. [Citations.] To prove this, a defendant must show that his counsel's errors were so serious that they deprived the defendant of a fair trial, a trial whose result is reliable. [Citation.]" *Chandler*, 129 Ill. 2d at 242.

In *Chandler*, the Illinois Supreme Court found the defense attorney's representation deficient under *Strickland*, reasoning:

"Defendant was charged with four counts of murder, including felony murder [citation]. Counsel's apparent strategy was to convince the jury, in closing argument, to believe defendant's denial, in his statements to the police, of killing the victim. This strategy was the basis of counsel's deficiency. Counsel did not attempt to develop a theory of innocence during his cross-examination of several witnesses, and did not cross-examine several key witnesses at all. Moreover, counsel presented no witnesses on behalf of the defense and failed to call defendant to the stand even though he had stated in his opening argument that defendant would testify and tell the jury what he did and did not do. Defense counsel apparently mistakenly believed that the jury could find defendant not guilty of murder if they believed that he had not inflicted the fatal wounds to the victim. *** The jury, however, having been instructed on both felony

murder and accountability, had no choice but to find defendant guilty of murder, residential burglary and arson.

The jury could have returned a not-guilty verdict on the charged offenses only if it had chosen to disregard the jury instructions. Counsel had admitted that defendant was telling the truth in his statements to the police, and that he had broken into the victim's house. The ultimate error of counsel's strategy, however, is revealed by the fact that even if counsel had succeeded in persuading the jury that defendant did not stab the victim, the jury was still instructed to find defendant guilty of murder under the law of accountability or felony murder." *Chandler*, 129 Ill. 2d at 246-47.

■ *Chandler* is distinguishable from the case at bar, however. In the instant cause, defense counsel argued to the jury that the State's evidence was insufficient to prove beyond a reasonable doubt that defendant used a weapon to commit the robbery. If the jury had been persuaded by defense counsel's argument and properly applied the instructions given by the trial judge, the jury would not have been obligated to find the defendant guilty of armed robbery. Furthermore, defense counsel here did cross-examine State witnesses to develop his trial strategy that the evidence did not prove beyond a reasonable doubt that defendant used a weapon to commit the robbery. Defense counsel also presented evidence on defendant's behalf to support this trial strategy. In view of these circumstances, we conclude that defendant was not denied effective assistance of counsel under *Strickland*.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Pursuant to the State's request and in accord with *People v. Nicholls* (1978), 71 Ill. 2d 166, and *People v. Agnew* (1985), 105 Ill. 2d 275, we hereby assess defendant $75 as costs for this appeal and incorporate it as part of our judgment.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.